FILED

1   Edward D. Fagan, Pro Se
2   590 NE Wavecrest Way
3   Boca Raton, FL 33432                    2019 FEB -6  PM 3: 24
4   Tel. (561) 757-5432
5   Email: faganinternational@gmail.com
6        Applicant Pro Se
7                                           BY:
8                UNITED STATES DISTRICT COURT
9                CENTRAL DISTRICT OF CALIFORNIA
10
11       CASE # 2: 19-mc-00018-UA-MAA
12
13   In Re:
14       Application of EDWARD D. FAGAN
15       pursuant to 28 U.S.C. § 1782 for Judicial Assistance in
16       obtaining evidence from CHASE BANK,              ┌─────────────────┐
17       EAST WEST BANK, and BANK OF AMERICA,             │      PAID       │
18       and MEI YOU LE INC., JIANHUA MA and XUXIN LIU    │                 │
19            (Chase Bank Account Holders);               │  FEB  6 2019    │
20       ZHEJIANG SUNMARR INT'L TRANS. CO. LTD.           │                 │
21            (East West Bank Account Holder); and        │ Clerk, US District Court │
22       MELLIN FAN (Bank of America Account Holder)      │   COURT 4612    │
23       for use in a Foreign Tribunal and Proceeding     └─────────────────┘
24
25
26              APPLICATION FOR JUDICIAL ASSISTANCE
27       PURSUANT TO 28 U.S.C. § 1782 TO AID IN FOREIGN PROCEEDING
28
29              EDWARD D. FAGAN (hereinafter "Applicant"), acting as a pro se Applicant,

30   hereby makes the following application for limited judicial assistance pursuant to 28 U.S.C. §

31   1782 to aid in Foreign Proceeding(s) which are currently pending in and under ongoing criminal

32   investigation in the Republic of South Africa (SAPS # 3471/1/2019) and future criminal

33   investigations hereby requests an order directing production of documentary evidence that is in

34   the custody, possession and/or control of Witness Banks CHASE BANK, EAST WEST BANK

In Re: Application of Edward Fagan against pursuant to 28 U.S.C. § 1782 for Judicial Assistance in obtaining evidence from Witness Banks
Chase Bank, East West Bank, Bank of America, and Witness Account Holders Mei You Le Inc, Jianhua Ma, XuXin Liu, Shejiang Sunmarr
International Trans and Mellin Fan for use in a Foreign Tribunal and Proceeding
*Page 1*

1  and BANK OF AMERICA (hereinafter collectively "Witness Banks") and MEI YOU LE INC.,

2  JIANHUA MA and XUXIN LIU (Chase Bank Account Holders), ZHEJIANG SUNMARR

3  INT'L TRANS CO. LTD. (East West Bank Account Holder); and MELLIN FAN (Bank of

4  America Account Holder) (hereinafter collectively "Witness Account Holders") each of which

5  can be found in and which do business in this District, and respectfully shows the Court the

6  following:

7

8  I.  **INTRODUCTION**

9     1.  This Application for Judicial Assistance is to obtain evidence as allowed pursuant to

10        Section 1782(a), and the US Supreme Court in *Intel v. Advanced Micro Devices, Inc.*,

11        542 U.S. 241 (2004) so that the evidence obtained from persons and entities residing

12        and/or found within this judicial district so that evidence " . . . for use in a proceeding

13        in a foreign or international tribunal, including criminal investigations conducted

14        before formal accusation."

15    2.  The evidence sought is for use in the Foreign Proceeding has already been filed in

16        the Republic of South Africa and is under criminal investigation.  That complaint is

17        SAPS # 3471/1/2019 and a copy of the docket sheet is attached as Exhibit 1.

18    3.  The evidence will also be used in additional criminal complaints that are being

19        prepared and will be filed in the coming weeks, with among other entities, the

20        Federal Bureau of Investigation, Internet Crime Complaint Center (IC3)

In Re: Application of Edward Fagan against pursuant to 28 U.S.C. § 1782 for Judicial Assistance in obtaining evidence from Witness Banks
Chase Bank, East West Bank, Bank of America, and Witness Account Holders Mei You Le Inc, Jianhua Ma, XuXin Liu, Shejiang Sunmarr
International Trans and Mellin Fan for use in a Foreign Tribunal and Proceeding
*Page 2*

1    https://www.ic3.gov/default.aspx and with the Royal Canadian Mounted Police and

2    Canadian Anti – Fraud Center http://www.antifraudcentre-centreantifraude.ca/fraud-

3    escroquerie/index-eng.htm .

4.  The Witness Banks from whom / which evidence is needed are several banks located

in this District.

5.  The Witness Account Holders from whom / which evidence is needed are persons / entities located within this District and who maintain accounts at the Witness Banks.

6.  The evidence sought is needed to "follow the money" and to thereby identify and bring to justice the persons / entities that committed the internet fraud to which Applicant, his partners and predecessors fell victim.

7.  As explained below, the internet fraud and crimes to which Applicant, his partners and predecessors fell victim is a new twist on the long standing "Nigerian Scams", involving inheritance monies. [1]

## II.   **FACTS RELATED TO THE APPLICATION**

1.  Applicant, his partners and predecessors fell victim to a scheme that involved electronic communications sent to an American Woman from Idaho (hereinafter "The Idaho Woman") who was allegedly an heir to inheritance monies and assets that were

---

[1]    Applicant acquired and is the assignee and owner of 100 % of the rights and interests of his partners and predecessors, including but not limited as relates to this Application, Russ Daneluk, Rick Quigley and Mark Meier.  Attached collectively as Exhibit 2.

In Re: Application of Edward Fagan against pursuant to 28 U.S.C. § 1782 for Judicial Assistance in obtaining evidence from Witness Banks Chase Bank, East West Bank, Bank of America, and Witness Account Holders Mei You Le Inc, Jianhua Ma, XuXin Liu, Shejiang Sunmarr International Trans and Mellin Fan for use in a Foreign Tribunal and Proceeding

*Page 3*

1      held in Nigeria but which could be transferred to the United States.

2   2.  The inheritance monies and assets to which The Idaho Woman claimed entitlement

3      allegedly came from her deceased father (hereinafter "Inheritance Monies") and were

4      allegedly lawfully earned during the course of her father's contracting business(es) in

5      Africa.

6   3.  The Idaho Woman came to know a Canadian national who she allegedly met from her

7      mother.

8   4.  The Idaho Woman and The Canadian National supposedly became engaged.

9   5.  The Canadian National was a relative of one of Applicant's partners and

10      predecessors.

11   6.  The Idaho Woman and The Canadian Man (and later Applicant, his partners and

12      predecessors) were told that in order to get The Inheritance Monies to be transferred

13      certain monies for fees, services, customs, duties and other charges had to be paid.

14   7.  Prior to approaching Applicant, his partners and predecessors, The Idaho Woman and

15      The Canadian National allegedly exhausted all their resources and were unable to

16      complete the transfer.

17   8.  They then approached Applicant, his partners and predecessors to induce them to

18      provide additional assistance, documents and monies.

19   8.  Applicant, his partners and predecessors were offered rights and interests to The

20      Inheritance Monies assuming they – Applicant, his partners and predecessors –

---

In Re: Application of Edward Fagan against pursuant to 28 U.S.C. § 1782 for Judicial Assistance in obtaining evidence from Witness Banks Chase Bank, East West Bank, Bank of America, and Witness Account Holders Mei You Le Inc, Jianhua Ma, XuXin Liu, Shejiang Sunmarr International Trans and Mellin Fan for use in a Foreign Tribunal and Proceeding

*Page 4*

1   would provide the additional monies, resources and assistance to get The Inheritance

2   Monies transferred into account(s) where they could then be legally distributed to the

3   interested persons.

4   9.   Applicant, his partners and predecessors provided with documents in which The

5   Idaho Woman purportedly transferred her interests in The Inheritance Monies to The

6   Canadian National.

7   10. On their face, the documents appeared to be legitimate and there appeared to be no

8   reason to doubt that The Inheritance Monies existed and could be legally transferred.

9   11. At all times, Applicant, his partners and predecessors believed that The Inheritance

10   Monies actually existed, that the rights to The Inheritance Monies were legitimate

11   and that they could lawfully acquire an interest in the monies and assets.

12   12. At all times, Applicant, his partners and predecessors were committed to the fact that

13   before anyone was entitled to receive and take any of The Inheritance Monies that all

14   taxes, customs duties, transfer fees and other government and regulatory compliance

15   requirements were met and that when the money was actually transferred, it would

16   be clean and not the subject of any illegal or unlawful activity.

17   13. Applicant, his partners and predecessors considered this to be a lawful business

18   investment to which they would contribute time, energy and monies in exchange for

19   the return of The Inheritance Monies.

20   14. From 2016 to present, Applicant, his partners and predecessors were solicited to

---

1   assist in getting The Inheritance Monies lawfully transferred because The Idaho

2   Woman and The Canadian National had exhausted all their resources, were unable to

3   complete the transfer and needed additional assistance and monies.

4   15. The American woman and The Canadian National gave Applicant, his partners and

5   predecessors documents and information that was given to them by the scheme's

6   coordinators and which to documents and information were intended to convince

7   Applicant, his partners and predecessors about the existence of the alleged

8   inheritance monies and the bona fides of what the scheme's coordinators said was

9   needed to be done in order to get the release of The Inheritance Monies.

10   16. Applicant, his partners and predecessors were told (verbally and in writing) that what

11   was needed to ensure the transfer of The Inheritance Monies was the payment of

12   various fees, invoices, costs or other monies to persons and entities who had accounts

13   at various banks in the United States.

14   17. Applicant, his partners and predecessors were presented with various documents all

15   of which were transmitted by email or text messages and in which the domain names,

16   email addresses and documents themselves appeared on their face to be authentic.

17   18. In reality, the documents and information presented to Applicant, his partners and

18   predecessors were fakes and were part and parcel of an elaborate scheme designed

19   and intended to trick Applicant, his partners and predecessors to transfer monies to

20   accounts throughout the United States and as relates to this Application, accounts at

---

In Re: Application of Edward Fagan against pursuant to 28 U.S.C. § 1782 for Judicial Assistance in obtaining evidence from Witness Banks Chase Bank, East West Bank, Bank of America, and Witness Account Holders Mei You Le Inc, Jianhua Ma, XuXin Liu, Shejiang Sunmarr International Trans and Mellin Fan for use in a Foreign Tribunal and Proceeding
*Page 6*

1    the Witness Banks in California.

2    19. The identity of the persons and entities behind the scheme remain unknown.

3    20. These persons were involved with creating (i) fake domain names disguising

4    themselves as banks, financial institutions and government agencies; (ii) fake

5    government agency letterheads and documents; and (iii) fake bank and financial

6    institution letterheads and documents.

7    21. By way of example, attached are examples of the fake emails originating from fake

8    domain addresses and transmitting forged documents:

9    a. Exhibit 3 - Email from Domain Name – "draftissue.com" – masquerading as

10   a "Chase Bank" domain and email name / address.   In reality, the domain

11   name "draftissue.com" and the email addresses associated with it are / were

12   not Chase Bank emails, the documents being transmitted were not authentic

13   Chase documents and the domain was owned and operated out of South

14   Africa by the woman who is the subject of the pending criminal investigation

15   in South Africa.

16   b. Exhibit 4 – proof that the domain name "draftissue.com" is NOT a Chase

17   Bank domain name but is owned and operated by the South African woman

18   who is the subject of the pending criminal investigation in South Africa and

19   who is one of the wrongdoers in the internet crimes committed against

20   Applicant, his partners and predecessors.

c.  Exhibit 5 - Email from Domain Name – "fddic.com" – masquerading as the United States Government's Federal Deposit Insurance Corporation ("FDIC") domain and email name / address.   In reality, the domain name "fddic.com" and the email addresses associated with it are / were not official US Government FDIC emails, the documents being transmitted were not authentic US Government FDIC documents and the domain was owned and operated out of South Africa by the woman who is the subject of the pending criminal investigation in South Africa.

d.  Exhibit 6 – proof that the domain name "draftissue.com" is NOT a Chase Bank domain name but is owned and operated by the South African woman who is the subject of the pending criminal investigation in South Africa and who is one of the wrongdoers in the internet crimes committed against Applicant, his partners and predecessors.

22. Using the fake, forged and false documents, Applicant, his partners and predecessors were "tricked" into believing that The Inheritance Monies are / were legitimate and could be transferred.

23. These fake, forged and false documents purportedly authenticated The Inheritance Monies and "confirmed" that The Inheritance Monies were held by banks or financial institutions oversees which will transfer the inheritance assets to banks or financial institutions in the United States.

24. From 2016 to present, Applicant, his partners and/or predecessors transferred millions of dollars in an effort to secure The Inheritance Monies, which combined were alleged to have been in excess of forty-seven million dollars (47,000,000.00 USD)

25. Some of the monies that Applicant, his partners and/or predecessors were tricked into sending were transferred to accounts at the Witness Banks and to the Witness Account Holders.

26. The transferred monies were supposed to be to secure the release of The Inheritance Monies that Applicant, his partners and predecessors acquired an interest and were helping to secure the patriation of the assets and the payment of all taxes, customs and duties related to the transfer of inheritance assets.

27. For now, the identity of the persons and entities who organized, implemented and benefitted from the scheme are unknown.

28. The only way that Applicant, his partners and predecessors can find who was behind the fraud and who took their monies, is to follow the money that was transferred to the banks which are the witnesses named in this Application.

29. This Application is needed so that Applicant, his predecessors and partners can identify the persons behind the scheme so that the authorities in South Africa, as well as in the United States and Canada, can (i) shut down the scheme and (ii) hold accountable those persons and entities who are / were behind and /or benefitted from

the scheme.

30. Applicant, his partners and predecessors have no available recourse and no ability on their own to identify the person or persons, or entities, who/which are behind this massive internet fraud.

31. Applicants therefore seeks to serve subpoenas upon the following witnesses:

    a.   <u>WITNESS BANKS</u>

        i.   CHASE BANK

            1.  La Puenta Branch located at 925 Hacienda Blvd., La Puenta, CA. 91744

            2.  Fullerton Branch located at 2569 E. Chapman Avenue, Fullerton, CA

            3.  Hacienda Branch located at 17160 Colima Rd. D, Hacienda Heights, CA 91745

        ii.   EAST WEST BANK, located at 18645 E. Gale Avenue, Ste. 100, City of Industry, CA  91748

        iii.  BANK OF AMERICA, 6356 Irvine Blvd., Irvine CA 92620

    b.   <u>WITNESS ACCOUNT HOLDERS, Account Numbers. Dates and Amounts of Transfers</u>

        i.   <u>EAST WEST BANK Account Holder</u> - Zhejiang Sunmarr Int'l Trans. Co. Ltd., 13860 Benson Avenue, Unit B, Chino, CA, 91710 - Account

1    # 322070381 8029004432.

2          1.   February 16, 2017 transfer in the amount of $ 10,000.00

3          2.   March 2, 2017 transfer in the amount of $ 16,000.00

4          3.   April 12, 2017 transfer in the amount of $ 15,000.00

5          4.   April 19, 2017 transfer in the amount of $ 9,000.00

6          5.   June 22, 2017 transfer in the amount of $18,500.00

7          6.   June 30, 2017 transfer in the amount of $15,000.00

8          7.   July 30, 2017 transfer in the amount of $15,000.00

9          8.   August 31, 2017 transfer in the amount of $15,000.00

10         9.   September 26, 2017 transfer in the amount of $10,000.00

11   ii.   CHASE BANK (La Puenta Branch) Account Holder - Mei You Le

12         Inc., 323 S. Sentous Avenue, West Covina, CA 91792 - Account #

13         889322058

14         1.   June 13, 2017 transfer in the amount of $35,000.00

15   iii.   CHASE BANK (Fullerton Branch) Account Holder – Jianhua Ma,

16         1718 N. Hale Avenue, Fullerton, CA, Account # 1026822298

17         1.   June 19, 2017 transfer in the amount of $35,000.00

18   iv.   CHASE BANK (Hacienda Branch) Account Holder – Xuxin Liu,

19         15222 Glen Hill Dr., Hacienda Heights, CA, Account # 3392178363

20         1.   July 6, 2017 transfer in the amount of $7,400.00

1           v.  <u>BANK OF AMERICA Account Holder</u> - Mellin Fan, 6380 Irvine

2           Blvd., Irvine, CA 92620 -  Account # 325085086850

3               1.  June 19, 2019 transfer in the amount of $36,000.00

32. This application seeks ONLY information related to the use of the above referenced

accounts in this fraudulent scheme and where the above referenced monies went after

they were transferred to the Witness Banks and the Witness Account Holders.

33. The Witness Banks should have information related to the Witness Account Holders

and activity that was conducted in and through the accounts at the Witness Banks

and which information and documents will help in the criminal investigation

presently being conducted in South African and the additional criminal complaints

that Applicant, his partners and predecessors are filing in the United States and

Canada.

34. The Witness Account Holders should have information related to the activity that

was conducted in and through their accounts, which information and documents will

help in the criminal investigation presently being conducted in South African and the

additional criminal complaints that Applicant, his partners and predecessors are filing

in the United States and Canada.

35. Applicant, his partners and predecessors believe that the Witness Account Holders

have knowledge of the persons and entities who designed, implemented and

benefited from this internet fraud and scheme.

---

36. This Application is necessary because to date, the real names and identities of the persons and entities who are / were designed, implemented and benefited from the internet fraud and scheme have been concealed from Applicant, his partners and predecessors.

37. The evidence to be produced and the testimony that will be elicited is for use in the proceedings in a foreign or international tribunal, including the criminal investigations that is now being conducted in South Africa and the additional criminal investigations that are being commenced in the United States and Canada and before formal accusation [as specifically provided for in 28 U.S.C. § 1782 (a)].

38. The Witness Banks and Witness Account Holders have knowledge, evidence and documentary evidence that needs to be presented to the South African, United States and Canadian.

39. There is no issue that this Application seeks to circumvent evidence gathering laws or procedures in South Africa as the Witness Banks and Witness Account Holders cannot be compelled by the South African investigating authorities to produce the evidence sought.

40. This Application also does not seek to circumvent evidence gathering laws or procedures in the United States or Canada both of which regularly accept evidence gathered pursuant to 28 U.S.C. § 1782.

41. This application is the only way to obtain the evidence from the Witness Banks and

1    Witness Account Holders needed to present to the South African authorities and

2    investigators who are attempting to shut down this internet fraud and scheme and to

3    hold accountable those persons / entities within their jurisdiction for their wrongful

4    acts against innocent persons.

5    42. Granting of the relief sought presents no hardship or burden to the Witness Banks

6    because the evidence is in their possession in this district and any electronically

7    stored evidence can easily be produced from their servers, computer stored files and

8    databases in this district.

9    43. Granting this application is consistent with the principles of 28 U.S.C. § 1782 and

10   Fed. R. Civ. P Rule 26. [2]

11

12   **II.    WITNESSES BANKS AND ACCOUNT HOLDERS ARE FOUND IN THIS**

13   **DISTRICT**

14      1.   Witness Banks

15        a.   Witness CHASE BANK resides and/or is found this District with branches at

---

[2]    28 U.S.C. § 1782 provides that testimony shall be taken and documents / things produced in accordance with the Federal Rules of Civil Procedure). Fed. R. Civ. P. 26(d) provides that a district court may authorize early discovery for the parties' and witnesses' convenience and in the interests of justice. *See, e.g., IO Group, Inc. v. Does 1-65, 2010 WL 4055667, at *2 (N.D. Cal. 2010); Solarbridge Tech. v. John Doe, 2010 WL 3419189 (N.D. Cal. 2010)* (applicant should be given opportunity through discovery to identify unknown persons/entities) *(citing Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980); Semitool, Inc. v. Tokyo Electron America, Inc., 208 F.R.D. 273, 275-77 (N.D. Cal. 2002)* and *Columbia Ins. Co. v. Seescandy.com, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999)* (factors to be considered when establishing good cause to learn the identity of an unknown entity through early discovery).

In Re: Application of Edward Fagan against pursuant to 28 U.S.C. § 1782 for Judicial Assistance in obtaining evidence from Witness Banks Chase Bank, East West Bank, Bank of America, and Witness Account Holders Mei You Le Inc, Jianhua Ma, XuXin Liu, Shejiang Sunmarr International Trans and Mellin Fan for use in a Foreign Tribunal and Proceeding

*Page 14*

| | |
|---|---|
| 1 | 925 Hacienda Blvd., La Puenta, CA, 2569 E. Chapman Avenue, Fullerton and |
| 2 | at 17160 Colima Rd. D, Hacienda, CA |
| 3 | b. Witness EAST WEST BANK resides and/or is found in this District with |
| 4 | offices at 18645 E. Gale Avenue, City of Industry, CA. |
| 5 | c. Witness BANK OF AMERICA resides and/or is found in this District with a |
| 6 | branch at 6356 Irvine Blvd., Irvine CA |
| 7 | 2. <u>Witness Account Holders</u> |
| 8 | a. Witness ZHEJIANG SUNMARR INT'L TRANS. CO. LTD. resides and/or is |
| 9 | found in this District with offices at 13860 Benson Avenue, Chino, CA. |
| 10 | b. Witness MEI YOU LE INC. resides and/or is found in this District with |
| 11 | offices at 323 S. Sentous Avenue, West Covina, CA. |
| 12 | c. Witness JIANHUA MA resides and/or is found in this District with offices at |
| 13 | 1718 N. Hale Avenue, Fullerton, CA. |
| 14 | d. Witness XUXIN LIU resides and/or is found in this District with offices at |
| 15 | 15222 Glen Hill Dr., Hacienda Heights, CA. |
| 16 | e. Witness MELLIN FAN resides and/or is found in this District with offices at |
| 17 | 6380 Irvine Blvd., Irvine, CA. |
| 18 | |
| 19 | **III.   <u>WITNESSES NOT PARTIES TO FOREIGN PROCEEDING / INVESTIGATIONS</u>** |
| 20 | |

In Re: Application of Edward Fagan against pursuant to 28 U.S.C. § 1782 for Judicial Assistance in obtaining evidence from Witness Banks Chase Bank, East West Bank, Bank of America, and Witness Account Holders Mei You Le Inc, Jianhua Ma, XuXin Liu, Shejiang Sunmarr International Trans and Mellin Fan for use in a Foreign Tribunal and Proceeding

*Page 15*

1    The witnesses CHASE BANK, EAST WEST BANK, BANK OF AMERICA,

2    ZHEJIANG SUNMARR INT'L TRANS. CO. LTD.., MEI YOU LE INC., JIANHUA

3    MA, XUXIN LIU and MELLIN FAN are not parties, nor are they in privy, with any

4    other party in the investigations and proceedings pending in South Africa or the future

5    investigations that will be conducted in the United States and Canada.

6

7   IV.   **THE APPLICATION IS CONSISTENT WITH SUPREME COURT PRINCIPLES**

8
9    1.   The application is consistent with the principles and standards set forth in *Intel Corp.*

10        *v. Advanced Micro Devices, Inc., 542 U.S. 241, 264 (2004); Consorcio Ecuatoriano*

11        *de Telecommunicaciones S.A. v. JAS Forwarding (USA), Inc., No. 11-12879, 2012*

12        *WL 2369166 (11th Cir. June 25, 2012); see In re Clerici, 481 F.3d 1324, 1331 (11th*

13        *Cir. 2007); United Kingdom v. United States, 238 F.3d 1312, 1319 (11th Cir. 2001);*

14        *Kulzer v. Esschem. Inc., 390 Fed. Appx. 88, 91 (3d Cir. 2010);* The Ninth Circuit has

15        held that applications for subpoenas pursuant to § 1782 may be filed *ex parte* because

16        "[t]he witnesses can . . . raise[] objections and exercise[] their due process rights by

17        motions to quash the subpoenas." *In re Letters Rogatory from Tokyo Dist., Tokyo,*

18        *Japan, 539 F.2d 1216, 1219 (9th Cir. 1976).*

19    2.   Further, as reflected by the language of § 1782, its purpose is to provide federal court

20        assistance in gathering evidence for use in a foreign tribunal. *See Intel Corp. v.*

21        *Advanced Micro Devices, Inc., 542 U.S. 241, 247 (2004); and Schmitz v. Bernstein*

1     *Liebhard & Lifshitz, LLP, 376 F.3d 79, 84 (2d Cir. 2004)* (§ 1782 has "twin aims,"

2     i.e., "providing efficient means of assistance to participants in international litigation

3     in our federal courts and encouraging foreign countries by example to provide similar

4     means of assistance to our courts") (internal quotation marks omitted).

5

**V.    EVIDENCE SOUGHT IS SPECIFIC/RELEVANT TO FOREIGN**

7        **PROCEEDINGS**

8     The evidence sought in this Petition is limited and Applicant requests only that

9     specific information related to the true identities of the persons and entities who

10     organized and were the perpetrators of the fraudulent scheme against Applicant, his

11     partners and predecessors.

12

**VI.   PETITION IS MADE IN COMPLIANCE WITH 28 U.S.C. § 1782**
**REQUIREMENTS, CIRCUIT PRECEDENT & SHOULD BE GRANTED**

    **A. The Requirements of Section 1782 and Subpoenas Have Been Met**

    1. 28 U.S.C. § 1782(a), which provides:

19     *The district court of the district in which a person resides or is found may order*

20     *him to give his testimony or statement or to produce a document or other thing for*

21     *use in a proceeding in a foreign or international tribunal, <u>including criminal</u>*

22     <u>*investigations conducted before formal accusation.*</u>   *The order may be made*

23     *pursuant to a letter rogatory issued, or request made, by a foreign or*

---

In Re: Application of Edward Fagan against pursuant to 28 U.S.C. § 1782 for Judicial Assistance in obtaining evidence from Witness Banks Chase Bank, East West Bank, Bank of America, and Witness Account Holders Mei You Le Inc, Jianhua Ma, XuXin Liu, Shejiang Sunmarr International Trans and Mellin Fan for use in a Foreign Tribunal and Proceeding

*Page 17*

1        *international tribunal or upon the application of any interested person and may*

2        *direct that testimony or statement be given, or the document or other thing be*

3        *produced, before a person appointed by the court. By virtue of his appointment,*

4        *the person appointed has power to administer any necessary oath and take the*

5        *testimony or statement. The order may prescribe the practice and procedure,*

6        *which may be in whole or part the practice and procedure of the foreign country*

7        *or the international tribunal, for taking the testimony or statement or producing*

8        *the document or other thing. To the extent that the order does not prescribe*

9        *otherwise, the testimony or statement shall be taken, and the document or other*

10       *thing produced, in accordance with the Federal Rules of Civil Procedure.*

11                                                                  *Emphasis added*

12   2.   Since 1948, "Congress [has] substantially broadened the scope of assistance federal

13       courts could provide for foreign proceedings," pursuant to § 1782. *Intel, 542 U.S. at*

14       *247-48.*

15   3.   The use of *ex parte* applications is widespread and, in many cases, unremarked upon

16       (and thus approved of *sub silentio*). *See, e.g., In re Request from UK Pursuant to*

17       *Treaty Between Gov't of U.S. & Gov't of UK on Mut. Assistance in Criminal Matters*

18       *in the Matter of Dolours Price*, 685 F.3d 1, 6 (1st Cir. 2012), *cert. denied*, 133 S. Ct.

19       1796 (2013); *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 78 (2d

20       Cir. 2012); *In re Consorcio Ecuatoriano de Telecommunicaciones S.A. v. JAS*

In Re: Application of Edward Fagan against pursuant to 28 U.S.C. § 1782 for Judicial Assistance in obtaining evidence from Witness Banks Chase Bank, East West Bank, Bank of America, and Witness Account Holders Mei You Le Inc, Jianhua Ma, XuXin Liu, Shejiang Sunmarr International Trans and Mellin Fan for use in a Foreign Tribunal and Proceeding
*Page 18*

1    *Forwarding (USA), Inc.*, 685 F.3d 987, 992 (11th Cir. 2012); *In re Clerici*, 481 F.3d

2    1324, 1329 (11th Cir. 2007).

3    4.   "The history of § 1782 reveals Congress' wish to strengthen the power of district

4        courts to respond to requests for international assistance." *Lo Ka Chun v. Lo To, 858*

5        *F.2d 1564, 1565 (11th Cir. 1988).*

6    5.   Congress has granted the district courts broad discretion in granting judicial

7        assistance under § 1782. *In re Application of Consorcio Ecuatoriano de*

8        *Telecommunicaciones S.A., 2012 WL 2369166, at *21 (11th Cir. 2012); In re Clerici,*

9        *481 F.3d 1324, 1331 (11th Cir. 2007); United Kingdom v. United States, 238 F.3d*

10       *1312, 1319 (11th Cir. 2001).*

11   6.   The district court has authority to grant § 1782 application for judicial assistance if

12       the following statutory requirements are met: (1) request must be made "by a foreign

13       or international tribunal," or by "any interested person"; (2) request must seek

14       evidence, whether it be the "testimony or statement" of a person or the production of

15       "a document or other thing"; (3) evidence must be "for use in a proceeding in a

16       foreign or international tribunal"; and (4) person/entity from whom/which discovery

17       is sought must reside and be found in the district of the district court ruling on the

18       application for assistance. 28 U.S.C. § 1782(a); *In re Clerici, 481 F.3d at 1332, and*

19       *In re Chevron Corp., 2010 U.S. Dist. LEXIS 47034, at *15.*

20   7.   Once the statutory requirements have been satisfied, the district court should consider

In Re: Application of Edward Fagan against pursuant to 28 U.S.C. § 1782 for Judicial Assistance in obtaining evidence from Witness Banks
Chase Bank, East West Bank, Bank of America, and Witness Account Holders Mei You Le Inc, Jianhua Ma, XuXin Liu, Shejiang Sunmarr
International Trans and Mellin Fan for use in a Foreign Tribunal and Proceeding
*Page 19*

1     the following factors in deciding whether to exercise the discretion granted under §

2     1782: (1) whether "the person from whom discovery sought is a participant in the

3     foreign proceeding," because "the need for § 1782(a) aid generally is not as apparent

4     as it ordinarily is when evidence is sought from a nonparticipant"; (2) "the nature of

5     the foreign tribunal, the character of the proceedings underway abroad, and the

6     receptivity of the foreign government or the court or agency abroad to U.S. federal

7     court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to

8     circumvent foreign proof-gathering restrictions or other policies of a foreign country

9     or the United States"; and (4) whether the request is otherwise "unduly intrusive or

10     burdensome." *In re Clerici, 481 F.3d at 1334 (quoting Intel, 542 U.S. at 264-65).*

11   8. The Supreme Court has held that § 1782 does not contain a "foreign-discoverability

12       requirement" – i.e., there is no requirement that the information sought be

13       discoverable under the law governing the foreign proceeding. Intel, 542 U.S. at 253.

14       The Court has further held that there is no requirement that a § 1782 applicant show

15       "United States law would allow discovery in domestic litigation analogous to the

16       foreign proceeding." Id. at 263.

17   9. Section 1782(a) further "directs judges to provide discovery assistance pursuant to the

18       Federal Rules of Civil Procedure," *Weber v. Finker, 554 F.3d 1379, 1383 (11ᵗʰ Cir.*

19       *2009),* so long as the order does not prescribe the practice and procedure of the

20       foreign country or the international tribunal.

---------------------------------------------------------------------------------------------
In Re: Application of Edward Fagan against pursuant to 28 U.S.C. § 1782 for Judicial Assistance in obtaining evidence from Witness Banks
Chase Bank, East West Bank, Bank of America, and Witness Account Holders Mei You Le Inc, Jianhua Ma, XuXin Liu, Shejiang Sunmarr
International Trans and Mellin Fan for use in a Foreign Tribunal and Proceeding
*Page 20*

10. Section 1782 (a) can also be used to discover the identity of individuals behind domain names and internet activity so that information can be provided to foreign courts and investigating authorities. *See In re Application for Appointment of a Commissioner re Request for Judicial Assistance for the Issuance of Subpoena Pursuant to 28 U.S.C. § 1782, No. C 11-80136 RS (MEJ), 2011 WL 2747302 (N.D. Cal. July 13, 2011)*

**B.  Applicant Has Met the § 1782(a) Statutory Requirements**

1.  The complaints pending and ongoing investigations by the South African Police is a foreign proceeding. *See 28 U.S.C. § 1782(a) and In re Letters of Request to Examine Witnesses, 59 F.R.D. 625, 629 (N.D. Cal. 1973)* ("crucial requirement is that the foreign body exercise adjudicative power and have an adjudicative purpose").

2.  Applicant is the complainant and a party to the foreign proceeding. *See 28 U.S.C. § 1782(a) and Intel, 542 U.S. at 256* (stating that an interested person under § 1782 "plainly reaches beyond the universe of persons designated 'litigant,'" although there is "[n]o doubt [that] litigants are included among and may be the most common example").

3.  Applicant seeks only limited evidence in the form of witness testimony and production of documents relevant to the transfers that Applicant, his partners and

predecessors were directed to make to the Witness Banks and to the Witness Account Holders necessary for it to be able to identify the person and/or entities that organized and implemented this internet fraud so that the foreign investigating authorities can take any and all actions necessary to stop the ongoing fraudulent scheme and bring to justice the persons and entities responsible for the scheme.

4. Applicant seeks discovery from the Witness Banks and the Witness Account Holders who / which are located and can be found in the district of the district court ruling on the application for assistance. *See 28 U.S.C. § 1782(a).*

### C. **Discretionary Factors Favor Granting Applicant's § 1782 Application**

1. **Witnesses are Outside Jurisdictional Reach of South African Authorities**

   a. The Witness Banks and Witness Account Holders are not the subjects of the criminal investigations pending in South Africa. [3]

   b. The Supreme Court held that since "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach ... , their evidence, available in the United States, may be unobtainable absent § 1782(a) aid."

      *Intel, 542 U.S. at 264.*

---

[3]     The Witness Banks and Witness Account Holders will not be the subjects of the criminal complaints to be filed in the United States or Canada

---

c. A foreign tribunal has jurisdiction over those appearing before it and can itself order them to produce evidence. In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid. *Id. at 264.*

d. As such, the relevant evidence, documents and information in the Witness Banks and the Witness Account Holders' possession, custody and control are not in the possession of the foreign tribunal and would be accessible without judicial assistance in this jurisdiction. *See In re Chevron Corp., 2010 U.S. Dist. LEXIS 47034, at \*20* (noting that Ecuadorian court and tribunal lacked jurisdiction to compel the individual, who was located in the district and not a party to the foreign proceedings, to produce the material sought) *and In re Microsoft Corp., 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006) (finding section 1782 assistance unnecessary and improper where the discovery requested was already in the foreign tribunal's possession).*

2. **Nature and Receptivity of South African Authorities & Tribunals**

a. Section 1782 (a) specifically provides *"The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, <u>including criminal investigations</u>*

---

1                   _conducted before formal accusation . . . . "_

2         b.   Section 1782 also authorizes and encourages judicial assistance even as to

3             foreign proceedings that have not yet commenced or advanced.   See _In re:_

4             _Clerici at 1333 n. 12 (citing Intel, 542 U.S. at 248-49)._

5         c.   Section 1782(a) contains no threshold requirement that evidence sought from

6             a federal district court would be discoverable under the law governing the

7             foreign proceeding. See _Intel, 543 U.S. at 247; see also In re Clerici, 481 F.3d_

8             _at 1333 n.12._

9         d.   Applicants need not meet a foreign discovery requirement, prior to being

10           entitled to assistance under section 1782. _See In re Application of Winning,_

11           _2010 WL 1796579 at *10, n.7._

12         e.   Further, The South African Police have already informed Applicant that

13           whatever evidence he is able to secure from procedures in the United States

14           and Canada will be welcomed in their investigation.

15
16     **3.**  **Applicant Is Not Attempting to Circumvent**
            **South African Proof Gathering Restrictions and Policies**
17
18         a.   Applicant is not attempting to circumvent foreign proof-gathering

19           mechanisms in its efforts to discover the true identities of the persons or

20           entities behind the internet fraud that was perpetrated against Applicant, his

21           predecessors and partners and does not have to prove receptivity to show they

22           are not attempting to circumvent foreign proof-gathering mechanisms. _See,_

1    *e.g., In re Chevron, 762 F. Supp. 2d 242, 252 (D. Mass. 2010).*

2       b.  Applicants' request for judicial assistance in order to obtain the documents

3           needed to show the true identities to discover the true identities of the persons

4           or entities behind the internet fraud that was perpetrated against Applicant, his

5           predecessors and partners and Applicant is not attempting to circumvent the

6           foreign investigating authorities in South Africa's discovery methods and

7           restrictions.  *See In re Application of Winning, 2010 WL 1796579 at \*10.*

8    **4.  <u>Application Not Unduly Burdensome or Intrusive</u>**

9
10      a.  The requests made by Applicant are narrowly tailored to only testimony,

11          information, documents and evidence that are directly related to the specific

12          transfers into the Witness Banks and Witness Account Holders accounts as to

13          which there is absolute proof that the documents are / should be in the

14          possession, custody and control of the witnesses and as such the request are

15          neither overly broad nor burdensome. *See In re Consorcio Ecuatoriano, 2012*

16          *WL 2369166,at \*20 n.7 and Intel, 542 U.S. at 265.*

17      b.  The evidence requested is "relevant to the foreign proceeding", to wit: the

18          criminal investigation in South Africa *See In re Dr. Braga, 789 F. Supp. 2d at*

19          *1304; compare In re Consorcio Ecuatoriano, 2012 WL 2369166 at \*24*

20          *(holding that the discovery is plainly relevant to the foreign proceedings*

21          *where they formed the basis for the defenses in those proceedings), Kang v.*

In Re: Application of Edward Fagan against pursuant to 28 U.S.C. § 1782 for Judicial Assistance in obtaining evidence from Witness Banks
Chase Bank, East West Bank, Bank of America, and Witness Account Holders Mei You Le Inc, Jianhua Ma, XuXin Liu, Shejiang Sunmarr
International Trans and Mellin Fan for use in a Foreign Tribunal and Proceeding
*Page 25*

1      *Noro- Moseley Partners, 246 Fed. App'x. 662, 664 (11th Cir. 2007) (denial*

2      *only due to "irrelevance of requested discovery to the nature of the foreign*

3      *proceedings").*

4    c. Applicants' requests are not unduly intrusive and seek only testimony,

5      information, documents and evidence related to the true identities of the

6      persons or entities behind the internet fraud to which Applicant, his partners

7      and predecessors fell victim and with documents are highly relevant to the

8      issues being considered in the criminal investigation pending in South Africa.

9    d. Because the Witness Banks and the Witness Account Holders are not

10     participants in or subject to the jurisdiction of the South African investigating

11     authorities, it is uncertain that the relevant information related to the true

12     identities of the persons and entities behind the internet fraud against

13     Applicant, his partners and predecessors can be accessed in the absence of the

14     granting of this request, as such are "outside the foreign tribunal's

15     jurisdictional reach." *See Intel, 542 U.S. at 244.*

16    e. The documents in the Witness Banks and Witness Account Holders'

17     possession, custody and control carry sufficient relevance and evidentiary

18     value and providing them does not subject the witnesses to undue burden. *See*

19     *Fed. R. Civ. P. 45(c)(3)(iv), Int'l Ass'n of Machinists and Aerospace Workers*

20     *v. P&B Transp., 2007 WL 4145974, at \*2 (M.D. Fla. 2007); Fadalla v. Life*

In Re: Application of Edward Fagan against pursuant to 28 U.S.C. § 1782 for Judicial Assistance in obtaining evidence from Witness Banks
Chase Bank, East West Bank, Bank of America, and Witness Account Holders Mei You Le Inc, Jianhua Ma, XuXin Liu, Shejiang Sunmarr
International Trans and Mellin Fan for use in a Foreign Tribunal and Proceeding
*Page 26*

1    *Automative Products, Inc., 258 F.R.D. 501, 504 (M.D. Fla. 2007) (citing*

2    *Wiwa v. Royal Dutch Petroleum Co., 392 F.3d 812, 818 (5th Cir. 2004).*

3       f.   The discovery requests of Applicant are sufficiently tailored and directly

4    relate to the foreign proceedings and limited to helping confirm the true

5    identities of the persons and entities behind the internet fraud against

6    Applicant, his partners and predecessors. *See In re Consorcio Ecuatoriano,*

7    *2012 WL 2369166 at \*25 (holding that discovery was appropriately tailored*

8    *as it "limit[ed] the request to information" within a six year time period*

9    *relating to one specific contract and the deposition of a person most*

10   *knowledgeable), with Advanced Micro Devices, Inc. v. Intel Corp., 2004 U.S.*

11   *Dist. LEXIS 21437 (on remand from the Supreme Court, the district court*

12   *found the 1782 application to be "unduly intrusive and burdensome [since*

13   *there was] . . . no attempt to tailor its application to the subject matter of the*

14   *EC Complaint").*

15     5.  **Applicant's Requests Satisfies Fed. R. Civ. P. Rules 26 & 45 Requirements**

16
17      a.   **FRCP Rule 26**

18
19      i.   Discovery under § 1782 is guided by the applicable standards found in the

20   Federal Rules of Civil Procedure. *See 28 U.S.C. § 1782* (providing that,

21   "[t]o the extent that the order does not prescribe otherwise, the testimony or

22   statement shall be taken, and the document or other thing produced, in

1     accordance with the Federal Rules of Civil Procedure).

2     ii.   A court may authorize early discovery for the parties' and witnesses'

3           convenience and in the interests of justice. Fed. R. Civ. P. 26(d). Courts in

4           this district generally consider whether a plaintiff has shown "good cause"

5           for the early discovery. *See, e.g., IO Group, Inc. v. Does 1-65, 2010 WL*

6           *4055667, at *2 (N.D. Cal. 2010); Solarbridge Tech. v. John Doe, 2010 WL*

7           *3419189 (N.D. Cal. 2010); Semitool, Inc. v. Tokyo Electron America, Inc.,*

8           *208 F.R.D. 273, 275-77 (N.D. Cal. 2002).*

9     iii.  When the identity of a party is not known, an applicant "should be given an

10          opportunity through discovery to identify the unknown defendants, unless it

11          is clear that discovery would not uncover the identities, or that the complaint

12          would be dismissed on other grounds." *Solarbridge, 2010 WL 3419189, at*

13          *1 (quoting Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980)).*

14    iv.   In evaluating whether an applicant establishes good cause to learn the

15          identity of an unknown party through early discovery, courts examine

16          whether the applicant (1) identifies the party with sufficient specificity that

17          the court can determine that the party is a real person who can be sued in

18          federal court, (2) recounts the steps taken to locate and identify the

19          defendant, (3) demonstrates that the action can withstand a motion to

20          dismiss, and (4) proves that the discovery is likely to lead to identifying

1    information that will permit service of process.  *Columbia Ins. Co. v.*

2    *Seescandy.com, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999).*

3    v.  The evidence needed by Applicants is in the possession, custody and control

4    of the Witness Banks and the Witness Account Holders and is limited to

5    identifying information, such as names, addresses and contact information

6    of the persons and entities behind the internet fraud against Applicant, his

7    partners and predecessors.  As such, the request does not violate the

8    requirements of Fed. R. Civ. P. Rule 26.

9    **b.  <u>FRCP Rule 45</u>**

10
11   i.  Under FRCP Rule 45(a)(1)(C) a subpoena may command a nonparty served

12   to produce documents that are in its "possession, custody, or control."

13   ii.  "Control is defined not only as possession, but as the legal right to obtain

14   the documents requested upon demand." *Searock v. Stripling, 736 F.2d 650,*

15   *653 (2d Cir. 1984).*   "Control" may also be found where an entity has

16   "access to" and the "ability to obtain the documents." *Bank of New York v.*

17   *Meridien BIAO Bank Tanzania Ltd., 171 F.R.D. 135, 144 (S.D.N.Y.*

18   *1997); see also, e.g., In re Ski Train Fire of November 11, 2000 Kaprun*

19   *Austria, 2006 WL 1328259, *5 (S.D.N.Y. 2006) (same); Addamax Corp. v.*

20   *Open Software Found., Inc., 148 F.R.D. 462, 467 (D. Mass. 1993).*

21   iii.  "Access" and "ability to obtain documents" is found where

---

In Re: Application of Edward Fagan against pursuant to 28 U.S.C. § 1782 for Judicial Assistance in obtaining evidence from Witness Banks
Chase Bank, East West Bank, Bank of America, and Witness Account Holders Mei You Le Inc, Jianhua Ma, XuXin Liu, Shejiang Sunmarr
International Trans and Mellin Fan for use in a Foreign Tribunal and Proceeding
*Page 29*

1      "documents ordinarily flow freely between" persons or entities. *Hunter*

2      *Douglas, Inc. v. Comfortex Corp., No. CIV. A. M8-85, 1999 WL 14007, at*

3      *\*3 (S.D.N.Y. Jan. 11, 1999).*

4      iv.    The evidence needed by Applicant is or should be in the possession, custody

5      and control of Witness Banks and Witness Account Holders.  And to the

6      extent there are any documents that may technically be in the control of

7      another over whom / which the Witness Banks or account holders have

8      control, those documents are also within the possession, custody and control

9      of Witness Banks and account holders, which - at least as relates to the true

10     identities of the persons and entities behind and which benefitted from the

11     internet fraud against Applicant, his partners and predecessors and the

12     Witness Banks and Witness Account Holders involvement with the internet

13     fraud against Applicant, his partners and predecessors – all of which are

14     ultimately controlled by the Witness Banks and Witness Account Holders,

15     who are the witnesses from which the evidence is requested and to which

16     the petition is directed.  *See In Re Imanagement Servs., 2005 U.S. Dist.*

17     *LEXIS 17025, \*10 (E.D.N.Y. Aug. 16, 2005); and Fleischmann v.*

18     *McDonald's Corp., 466 F. Supp. 2d 1020, 1031 (N.D. Ill. 2006).*

19
20    **VII.**    **CONCLUSION**

21      **WHEREFORE,** in view of the foregoing, Applicant prays (i) for an Order (in the form

---

1    attached) directing / permitting the issuance of subpoenas duces tecum (in the forms attached) to

2    the Witness Banks and the Witness Account Holders to appear, testify and/or produce the limited

3    categories of testimony, information, documents, information and records and (ii) for such other

4    and further relief as is just and appropriate and consistent with 28 U.S.C. § 1782.

5

6

7

8

9

10                        Respectfully submitted,

11

12

13    Dated: February __6__ , 2019      /s/ Edward D. Fagan

14

15                        Edward D. Fagan, Pro Se

16                        590 NE Wavecrest Way

17                        Boca Raton, FL. 33432

18                        Tel. (561) 757-5432

19                        Email: faganinternational@gmail.com

20                                 Applicant Pro Se

In Re: Application of Edward Fagan against pursuant to 28 U.S.C. § 1782 for Judicial Assistance in obtaining evidence from Witness Banks
Chase Bank, East West Bank, Bank of America, and Witness Account Holders Mei You Le Inc, Jianhua Ma, XuXin Liu, Shejiang Sunmarr
International Trans and Mellin Fan for use in a Foreign Tribunal and Proceeding
*Page 31*

# EXHIBIT 1

SOUTH AFRICAN POLICE SERVICE   SUID-AFRIKAANSE POLISIEDIENS

## CASE DOCKET / SAAKDOSSIER

MR     JAGAI

COWARD DAVIS

5056087777

1952 10 80

AMERICAN

-66

345 INZIROOS

Zinoceli
Pretoria

0829231250

5901YE WAVE CREST WAY

BOCA RATON
FLORIDA

+15614000287

SOUTH AFRICAN POLICE SERVICE          SUID-AFRIKAANSE POLISIEDIENS

STATEMENT / VERKLARING

01

I Edward Davis Jagun [illegible] make [illegible] oath in my [illegible]

I am an adult man, passport no 5036 [illegible] 56 years old residing at 34 Clarks Road, [illegible] 923 1150 [illegible] 1156 4000267.

On the 2013 04 04 at about 08:15 Mrs Cynthia Medeiros, she pretended to be Chase bank and the Federal Deposit Insurance Corporation, she instructed us to transfer money for [illegible] to get the release of the inheritance money, [illegible] to be able to released the inheritance funds.

The total amount we deposited is 600 000 USA Dollars. The reason she convinced us to send the money is by creating the false domain names and false documents. The domain name is chaseissue.com which she termed it with Chase bank. The second domain name is ffdic.com which she named it federal deposit insurance corporation (FDIC).

The lady mentioned on the statements Mrs Cynthia Madeires, cell no 0810027970. She is the suspect. I am attaching all the relevant documents.

Edward Davis Jagun



# EXHIBIT 2

# ASSIGNMENT

## SECTION 1 - THE PARTIES

**Party # 1 – R.W. Daneluk - Assignor**

      R. W. Daneluk (D/O/B Nov 3, 1937 and located at 10504 100 Avenue, Fort St. John, BC V1J 1Z2 CANADA (hereinafter "Daneluk" or "Party # 1") is the owner of 100% of the interests and rights to recovery and ownership of certain claims for recovery of monies that were paid and sent by international wire transfers between 2016 to 2018 to various persons, entities, governmental institutions and financial institutions and which monies (hereinafter "Monies Paid / Wired") were paid and sent from, to and through certain banks and financial institutions located in Canada, the United States and elsewhere in the world as part of the purchase and recovery and acquisition of various assets including but not limited to estate assets, real property, leases, contract rights, outstanding contract revenue, personal property, unpaid but earned income, pension and retirement plans, monies held in bank accounts, assets deposited into safe deposit boxes and vaults and other real and personal property and assets and which "Monies Paid / Wired" certain third parties in bank accounts including but not to the below listed institutions and other persons / entities who / which assisted with the transfer of monies:

### Bank and Financial Institutions Involved :

Bank of America, Bank of Montreal, Barclays, BNP Paribas, Canadian Imperial Bank of Commerce, Citibank, Chase (JP Morgan Chase), Compass Bank, Credit Registry Corp (United Bank of Africa), East West Bank, Fidelity Investments, Forte – Equity Bank, Huntington National Bank, Money Gram, MUFG Union Bank, PNC Bank, Royal Bank of Canada, Scotia Bank, Sun Trust, TD Bank, USAA, Western Union, Wells Fargo, Zhejiang Tailong Commercial Bank, The World Bank and other sending intermediary, receiving and transferor/transferee banks and institutions as may be identified in the future.

### Other Persons / Entities or Institutions :

Internet / Domain Service Providers, Lawyers, Government or Quasi-Government Agencies, Transportation Companies, Insurance Companies and such other persons / entities that were involved with the solicitation, sending and receiving of the "Monies Paid / Wired"

**Party # 2 - Edward D. Fagan - Assignee**

      Edward D. Fagan (D/O/B: 20/10/52) residing at 590 NE Wavecrest Way, Boca Raton, FL 33432 and US Passport # 505608731 (hereinafter "Assignee" or "Party # 2").

## SECTION 2 - ASSIGNOR & ASSIGNEE

2.1      Party # 1 Daneluk hereby assigns to Party # 2 Fagan the absolute right and

Initials: _RWD_ and _Se Adf_                Page 1

authority to take actions indicated below on behalf of 100 % of Daneluk's interests in the recovery of the "Monies Paid / Wired" as described in Section 1.1 above and (i) to file administrative, regulatory, civil and criminal complaints; (ii) to make claims related to recovery of monies paid and transferred; (iii) to make claims to compel identification of the undisclosed parties to whom the paid and transferred monies may have been subsequently transferred by the banks and/or persons identified to date; and (iv) to make claims against the banks and other persons/institution who/which were involved with and or benefitted from the "Monies Paid / Wired".

    **2.2**       Upon the successful conclusion of efforts and/or claims as explained above related to recovery of "Monies Paid / Wired" or when any portion of the "Monies Paid / Wired", plus interest and other damages, are returned, Party # 2 Fagan and Party # 1 Daneluk agree that recovered monies, plus any additional interest and/or other damages, shall be deposited into a Trust or Escrow account of a mutually agreed upon lawyer or accountant in Fort Saint John, British Columbia and the monies shall be retained in such Trust or Escrow account until the parties agree upon division of the recovered monies and payment of any unpaid fees and expenses incurred.

    **2.3**       Upon the successful recovery of "Monies Paid / Wired", plus any additional interest and other damages, the parties further agree that they shall meet, discuss and agree upon an equitable and fair division of any additional monies and assets that may be recovered.

    **2.4**       The assignment shall take effect as of this date and shall last up to and including

_____.

    **2.5**       Party # 2 Fagan agrees to use his best efforts and diligence to pursue persons, entities, financial institutions, government institutions and others involved with "Monies Paid / Wired" and (i) locate and identify the entities responsible for and/or involved with the above referenced "Monies Paid / Wired", (ii) compel the return of "Monies Paid / Wired", plus appropriate interest and other damages and (iii) compel compliance of the return of other assets for which the "Monies Paid / Wired" were transferred, wired and paid.

    **2.6**       Party # 1 Daneluk and Party # 2 Fagan shall agree upon a budget and payment of all ongoing fees, expenses and costs associated with the above stated purposes. Any fees, expenses and costs that may be incurred and which have not been agreed to by the Parties shall be borne exclusively by the Party who / which was responsible for incurring the fees, expenses and costs that were not included in the agreed upon budget.

    **2.7**       This assignment is personal to Fagan and may NOT re-assigned to third parties or others without the prior written consent of Party 1.

Initials: _____ and _____                                       Page 2

## SECTION 3 – CONDITION(S)

**3.1**    Party # 2 Fagan has paid ten dollars (USD) and has provided other good and valuable consideration to Party # 1 Daneluk in order to purchase this Assignment.

**3.2**    Party # 2 represents that he will undertake and pursue civil and criminal claims which are intended to secure the return of the "Monies Paid / Wired", to secure the payment of damages and expenses and to identify and hold responsible all persons, entities, financial institutions and / or government agencies that were involved with and / or benefited from the "Monies Paid / Wired".

**3.3**    Party # 1 Daneluk understands and agrees that (i) Party # 2 Fagan is not and will not offer legal advice to Party # 1 Daneluk during the course of his work during this Assignment, (ii) Party # 1 Daneluk has his own lawyer and / or has had a chance to consult with his own lawyer prior to entering into this Assignment.

## SECTION 4 – WARRANTY

**4.1**    For purposes of this Assignment, Party # 1 Daneluk hereby warranties and confirms that has the absolute right to execute this assignment and that he will provide all reasonable cooperation with the Party # 2 Fagan to assist him in the performance of the obligations contained herein.

**4.2**    Insofar as legally permissible, any warranty as to Party # 2 Fagan's performance, success or results (other than Party # 2 Fagan's using its best efforts) to secure performance of the above contracts or to recover the advance fees paid or any other damages is disclaimed.

## SECTION 5 - OBLIGATION OF COOPERATION

Party # 1 Daneluk agrees to cooperate with Party # 2 Fagan with regard to the preparation of declarations, statements or evidence needed for applications to regulatory, administrative, civil and criminal investigations.

## SECTION 6 - DUTY TO CONSULT & STRATEGIZE

Party # 2 Fagan agrees to consult and strategize with Party # 1 Daneluk the efforts he will take in the performance of his obligations contained herein.  Party # 2 Fagan shall also consult and strategize with Party # 2 Daneluk with regard to any responses and/or opposition to Party # 2 Fagan's efforts.

## SECTION 7 - WRITTEN FORM: CHOICE OF LAWS: SEVERABILITY

Initials: _____ and _____

Page 3

**7.1**     Amendments and addenda or corrections to this Assignment are not valid unless set forth in writing and notarized.

**7.2**     The Parties agree that this Assignment is governed by the laws of the United States and Canada and that in the event of any dispute related to this Assignment, the Court(s) of the United States and Canada shall both be deemed competent to hear and shall have jurisdiction over any dispute.

## SECTION 8 – DISPUTE RESOLUTION BINDING ARBITRATION

**8.1**     In the event of a dispute between the parties, prior to being able to submit the dispute to a Court, the parties agree that the dispute must first be submitted for binding (and non-appealable) Arbitration in Canada or the United States, before the Canadian Arbitration Association ( https://canadianarbitrationassociation.ca/ ) or the American Arbitration Association – ( https://www.adr.org/ ) and arbitrators shall be chosen from the list of recognized and approved arbitrators from either of those two Associations.

**8.2**     The arbitration shall be conducted in accordance with the Rules of the American Arbitration Society and/or the Canadian Arbitration Society, depending upon the choice of Arbitration Associations.

**8.3**     In the event the dispute is submitted for Arbitration, the Arbitration shall be conducted and concluded within 6 months of the date it is submitted.

## SECTION 9 – MISCELLANEOUS PROVISIONS

**9.1**     Should individual provisions or clauses of this Assignment be or become invalid in whole or in part, the remaining provisions hereof shall continue to apply. The Parties agree to act in good faith in replacing the invalid provision by agreeing upon a valid provision that most closely approximates the spirit and purpose of the invalid provision.

**9.2**     Prior to executing this Assignment, each Party has had an opportunity to consult with his / their own counsel. This Assignment is made with full authority and knowledge of its terms, conditions and presents.

**9.3**     It is agreed that Party # 1 Daneluk shall pay Party # 2 Fagan limited / reduced consulting fees and reimbursement of expenses according to a budget that shall be agreed upon by them.   In the event, Party # 2 Daneluk refuses to agree upon a budget or does not timely pay the agreed upon budgeted fees and reimbursements, Party # 2 Fagan shall be return the Assignment and suspend or cease performance of the actions contemplated herein.

Initials: _____ and _____                                Page 4

## This Assignment is approved by the Parties as follows:

### Assignor – Party # 1

Dated: _JAN 18, 2019_
Fort Saint John, British Columbia

_R. W. Daneluk_

Notarized By:
Dated: _JAN 18/19_
Fort Saint John, British Columbia

Print Name: _R. W DANELUK_ STEVEN COPE
Address: _10864 – 100 AVE_ 10700 100
_FORT ST JOHN, B.C._

Notary Seal

Tel #: _280 – 785 – 7770_ 2502624537
Email: _RUSS @ DANELUK. COM_
_cope@ Katerberglaw cs_

--------------------------------------------

### Assignee – Party # 2

Edward D. Fagan accepts this Assignment according to the above terms / conditions.

Dated: _Jan. 18, 2019_
Boca Raton, Florida

_Edward D. Fagan_

Notarized By:
Dated: _____
Boca Raton, Florida

Print Name: _Edward D. Fagan_
Address: _590 NE Wavecrest Way_
_Boca Raton, FL 33432_

Notary Seal

Tel #: _561-400-0287_
Email: _faganinternational @_
_gmail.com_

Initials: _RWD_ and _EDF_                                    Page 5

# ASSIGNMENT

## SECTION 1 - THE PARTIES

### Party # 1 – Richard Quigley - Assignor

      Richard Quigley (D/O/B _6/12/1965_ and located at 13544 Old Hope Road, Box 291, Charlie Lake, BC V0C 1HO CANADA (hereinafter "Quigley" or "Party # 1") is the owner of 100% of the interests and rights to recovery and ownership of certain claims for recovery of monies that were paid and sent by international wire transfers between 2016 to 2018 to various persons, entities, governmental institutions and financial institutions and which monies (hereinafter "Monies Paid / Wired") were paid and sent from, to and through certain banks and financial institutions located in Canada, the United States and elsewhere in the world as part of the purchase and recovery and acquisition of various assets including but not limited to estate assets, real property, leases, contract rights, outstanding contract revenue, personal property, unpaid but earned income, pension and retirement plans, monies held in bank accounts, assets deposited into safe deposit boxes and vaults and other real and personal property and assets and which "Monies Paid / Wired" certain third parties in bank accounts including but not to the below listed institutions and other persons / entities who / which assisted with the transfer of monies:

### Bank and Financial Institutions Involved :

Bank of America, Bank of Montreal, Barclays, BNP Paribas, Canadian Imperial Bank of Commerce, Citibank, Chase (JP Morgan Chase), Compass Bank, Credit Registry Corp (United Bank of Africa), East West Bank, Fidelity Investments, Forte – Equity Bank, Huntington National Bank, Money Gram, MUFG Union Bank, PNC Bank, Royal Bank of Canada, Scotia Bank, Sun Trust, TD Bank, USAA, Western Union, Wells Fargo, Zhejiang Tailong Commercial Bank, The World Bank and other sending intermediary, receiving and transferor/transferee banks and institutions as may be identified in the future.

### Other Persons / Entities or Institutions :

Internet / Domain Service Providers, Lawyers, Government or Quasi-Government Agencies, Transportation Companies, Insurance Companies and such other persons / entities that were involved with the solicitation, sending and receiving of the "Monies Paid / Wired"

### Party # 2 - Edward D. Fagan - Assignee

      Edward D. Fagan (D/O/B: 20/10/52) residing at 590 NE Wavecrest Way, Boca Raton, FL 33432 and US Passport # 505608731 (hereinafter "Assignee" or "Party # 2").

## SECTION 2 - ASSIGNOR & ASSIGNEE

**2.1**      Party # 1 Quigley hereby assigns to Party # 2 Fagan the absolute right and

Initials: _RQ_ and _Ne Coñt_               Page 1

authority to take actions indicated below on behalf of 100 % of Quigley's interests in the recovery of the "Monies Paid / Wired" as described in Section 1.1 above and (i) to file administrative, regulatory, civil and criminal complaints, (ii) to make claims related to recovery of monies paid and transferred; (iii) to make claims to compel identification of the undisclosed parties to whom the paid and transferred monies may have been subsequently transferred by the banks and/or persons identified to date; and (iv) to make claims against the banks and other persons/institution who/which were involved with and or benefitted from the "Monies Paid / Wired".

      **2.2**      Upon the successful conclusion of efforts and/or claims as explained above related to recovery of "Monies Paid / Wired" or when any portion of the "Monies Paid / Wired", plus interest and other damages, are returned, Party # 2 Fagan and Party # 1 Quigley agree that recovered monies, plus any additional interest and/or other damages, shall be deposited into a Trust or Escrow account of a mutually agreed upon lawyer or accountant in Fort Saint John, British Columbia and the monies shall be retained in such Trust or Escrow account until the parties agree upon division of the recovered monies and payment of any unpaid fees and expenses incurred.

      **2.3**      Upon the successful recovery of "Monies Paid / Wired", plus any additional interest and other damages, the parties further agree that they shall meet, discuss and agree upon an equitable and fair division of any additional monies and assets that may be recovered.

      **2.4**      The assignment shall take effect as of this date and shall last up to and including

_____.

      **2.5**      Party # 2 Fagan agrees to use his best efforts and diligence to pursue persons, entities, financial institutions, government institutions and others involved with "Monies Paid / Wired" and (i) locate and identify the entities responsible for and/or involved with the above referenced "Monies Paid / Wired", (ii) compel the return of "Monies Paid / Wired", plus appropriate interest and other damages and (iii) compel compliance of the return of other assets for which the "Monies Paid / Wired" were transferred, wired and paid.

      **2.6**      Party # 1 Quigley and Party # 2 Fagan shall agree upon a budget and payment of all ongoing fees, expenses and costs associated with the above stated purposes. Any fees, expenses and costs that may be incurred and which have not been agreed to by the Parties shall be borne exclusively by the Party who / which was responsible for incurring the fees, expenses and costs that were not included in the agreed upon budget.

      **2.7**      This assignment is personal to Fagan and may NOT re-assigned to third parties or others without the prior written consent of Party 1.

Initials: _____ and _____

## SECTION 3 – CONDITION(S)

**3.1**     Party # 2 Fagan has paid ten dollars (USD) and has provided other good and valuable consideration to Party # 1 Quigley in order to purchase for this Assignment.

**3.2**     Party # 2 represents that he will undertake and pursue civil and criminal claims which are intended to secure the return of the "Monies Paid / Wired", to secure the payment of damages and expenses and to identify and hold responsible all persons, entities, financial institutions and / or government agencies that were involved with and / or benefited from the "Monies Paid / Wired".

**3.3**     Party # 1 Quigley understands and agrees that (i) Party # 2 Fagan is not and will not offer legal advice to Party # 1 Quigley during the course of his work during this Assignment, (ii) Party # 1 Quigley has his own lawyer and / or has had a chance to consult with his own lawyer prior to entering into this Assignment.

## SECTION 4 – WARRANTY

**4.1**     For purposes of this Assignment, Party # 1 Quigley hereby warranties and confirms that has the absolute right to execute this assignment and that he will provide all reasonable cooperation with the Party # 2 Fagan to assist him in the performance of the obligations contained herein.

**4.2**     Insofar as legally permissible, any warranty as to Party # 2 Fagan's performance, success or results (other than Party # 2 Fagan's using its best efforts) to secure performance of the above contracts or to recover the advance fees paid or any other damages is disclaimed.

## SECTION 5 - OBLIGATION OF COOPERATION

Party # 1 Quigley agrees to cooperate with Party # 2 Fagan with regard to the preparation of declarations, statements or evidence needed for applications to regulatory, administrative, civil and criminal investigations.

## SECTION 6 - DUTY TO CONSULT & STRATEGIZE

Party # 2 Fagan agrees to consult and strategize with Party # 1 Quigley the efforts he will take in the performance of his obligations contained herein.  Party # 2 Fagan shall also consult and strategize with Party # 2 Quigley with regard to any responses and/or opposition to Party # 2 Fagan's efforts.

## SECTION 7 - WRITTEN FORM; CHOICE OF LAWS; SEVERABILITY

Initials: _____ and _____                                                  Page 3

**7.1**        Amendments and addenda or corrections to this Assignment are not valid unless set forth in writing and notarized.

**7.2**        The Parties agree that this Assignment is governed by the laws of the United States and Canada and that in the event of any dispute related to this Assignment, the Court(s) of the United States and Canada shall both be deemed competent to hear and shall have jurisdiction over any dispute.

## SECTION 8 – DISPUTE RESOLUTION BINDING ARBITRATION

**8.1**        In the event of a dispute between the parties, prior to being able to submit the dispute to a Court, the parties agree that the dispute must first be submitted for binding (and non-appealable) Arbitration in Canada or the United States, before the Canadian Arbitration Association ( https://canadianarbitrationassociation.ca/ ) or the American Arbitration Association – ( https://www.adr.org/ ) and arbitrators shall be chosen from the list of recognized and approved arbitrators from either of those two Associations.

**8.2**        The arbitration shall be conducted in accordance with the Rules of the American Arbitration Society and/or the Canadian Arbitration Society, depending upon the choice of Arbitration Associations.

**8.3**        In the event the dispute is submitted for Arbitration, the Arbitration shall be conducted and concluded within 6 months of the date it is submitted.

## SECTION 9 – MISCELLANEOUS PROVISIONS

**9.1**        Should individual provisions or clauses of this Assignment be or become invalid in whole or in part, the remaining provisions hereof shall continue to apply. The Parties agree to act in good faith in replacing the invalid provision by agreeing upon a valid provision that most closely approximates the spirit and purpose of the invalid provision.

**9.2**        Prior to executing this Assignment, each Party has had an opportunity to consult with his / their own counsel. This Assignment is made with full authority and knowledge of its terms, conditions and presents.

**9.3**        It is agreed that Party # 1 Quigley shall pay Party # 2 Fagan limited / reduced consulting fees and reimbursement of expenses according to a budget that shall be agreed upon by them.   In the event, Party # 2 Quigley refuses to agree upon a budget or does not timely pay the agreed upon budgeted fees and reimbursements, Party # 2 Fagan shall be return the Assignment and suspend or cease performance of the actions contemplated herein.

Initials: _____ and _____                                                        Page 4

## This Assignment is approved by the Parties as follows:

### Assignor – Party # 1

Dated: ~~Dec~~ Jan 18 / 2019

Fort Saint John, British Columbia

_____
Richard Quigley

Notarized By:
Dated: _____
Fort Saint John, British Columbia

Print Name:  PA STEVEN COPE
Address:  10740  1W  8

FT ST JOH – BC

Notary Seal

Tel #:  250 260 4333
Email:  cope @ katerberglow . ca

-------------------------------------------------

### Assignee – Party # 2

Edward D. Fagan accepts this Assignment according to the above terms / conditions.

Dated: Jan. 18, 2019

Boca Raton, Florida

_____
Edward D. Fagan

Notarized By:
Dated: _____
Boca Raton, Florida

Print Name:  Edward D. Fagan
Address:  590 NE Wavecrest Way
Boca Raton  FL 33432

Notary Seal

Tel #:  561-400-2287
Email:  faganinternational@
gmail.com

Initials: _____ and _____                                    Page 5

# ASSIGNMENT

## SECTION 1 - THE PARTIES

### Party # 1 – Anton W. Stoeckl - Assignor

Anton W. Stoeckl (D/O/B _April 15, 1944_ located at 4609 Baldonnel Road, B.C. V0C 1C4 – CANADA individually (hereinafter "Stoeckl" or "Party # 1") is the owner of 100% of interests and rights to recovery and ownership of certain claims for recovery of monies that were paid and sent by international wire transfers between 2016 to 2018 to various persons, entities, governmental institutions and financial institutions and which monies (hereinafter "Monies Paid / Wired") were paid and sent from, to and through certain banks and financial institutions located in Canada, the United States and elsewhere in the world as part of the purchase and recovery and acquisition of various assets including but not limited to estate assets, real property, leases, contract rights, outstanding contract revenue, personal property, unpaid but earned income, pension and retirement plans, monies held in bank accounts, assets deposited into safe deposit boxes and vaults and other real and personal property and assets and which "Monies Paid / Wired" certain third parties in bank accounts including but not to the below listed institutions and other persons / entities who / which assisted with the transfer of monies:

#### Bank and Financial Institutions Involved :

Bank of America, Bank of Montreal, Barclays, BNP Paribas, Canadian Imperial Bank of Commerce, Citibank, Chase (JP Morgan Chase), Compass Bank, Credit Registry Corp (United Bank of Africa), East West Bank, Fidelity Investments, Forte – Equity Bank, Huntington National Bank, Money Gram, MUFG Union Bank, PNC Bank, Royal Bank of Canada, Scotia Bank, Sun Trust, TD Bank, USAA, Western Union, Wells Fargo, Zhejiang Tailong Commercial Bank, The World Bank and other sending intermediary, receiving and transferor/transferee banks and institutions as may be identified in the future.

#### Other Persons / Entities or Institutions :

Internet / Domain Service Providers, Lawyers, Government or Quasi-Government Agencies, Transportation Companies, Insurance Companies and such other persons / entities that were involved with the solicitation, sending and receiving of the "Monies Paid / Wired"

### Party # 2 - Edward D. Fagan - Assignee

Edward D. Fagan (D/O/B: 20/10/52) residing at 590 NE Wavecrest Way, Boca Raton, FL 33432 and US Passport # 505608731 (hereinafter "Assignee" or "Party # 2").

## SECTION 2 - ASSIGNOR & ASSIGNEE

2.1     Party # 1 Stoeckl hereby assigns to Party # 2 Fagan the absolute right and authority to take actions indicated below on behalf of 100 % of Stoeckl's interests in the recovery of the "Monies Paid / Wired" as described in Section 1.1 above and (i) to file

Initials: _____ and _____        Page 1

administrative, regulatory, civil and criminal complaints; (ii) to make claims related to recovery of monies paid and transferred; (iii) to make claims to compel identification of the undisclosed parties to whom the paid and transferred monies may have been subsequently transferred by the banks and/or persons identified to date; and (iv) to make claims against the banks and other persons/institution who/which were involved with and or benefitted from the "Monies Paid / Wired".

2.2     Upon the successful conclusion of efforts and/or claims as explained above related to recovery of "Monies Paid / Wired" or when any portion of the "Monies Paid / Wired", plus interest and other damages, are returned, Party # 2 Fagan and Party # 1 Stoeckl agree that recovered monies, plus any additional interest and/or other damages, shall be deposited into a Trust or Escrow account of a mutually agreed upon lawyer or accountant in Fort Saint John, British Columbia and the monies shall be retained in such Trust or Escrow account until the parties agree upon division of the recovered monies and payment of any unpaid fees and expenses incurred.

2.3     Upon the successful recovery of "Monies Paid / Wired", plus any additional interest and other damages, the parties further agree that they shall meet, discuss and agree upon an equitable and fair division of any additional monies and assets that may be recovered.

2.4     The assignment shall take effect as of this date and shall last up to and including

2.5     Party # 2 Fagan agrees to use his best efforts and diligence to pursue persons, entities, financial institutions, government institutions and others involved with "Monies Paid / Wired" and (i) locate and identify the entities responsible for and/or involved with the above referenced "Monies Paid / Wired", (ii) compel the return of "Monies Paid / Wired", plus appropriate interest and other damages and (iii) compel compliance of the return of other assets for which the "Monies Paid / Wired" were transferred, wired and paid.

2.6     Party # 1 Stoeckl and Party # 2 Fagan shall agree upon a budget and payment of all ongoing fees, expenses and costs associated with the above stated purposes. Any fees, expenses and costs that may be incurred and which have not been agreed to by the Parties shall be borne exclusively by the Party who / which was responsible for incurring the fees, expenses and costs that were not included in the agreed upon budget.

2.7     This assignment is personal to Fagan and may NOT re-assigned to third parties or others without the prior written consent of Party 1.

## SECTION 3 – CONDITION(S)

3.1     Party # 2 Fagan has paid ten dollars (USD) and has provided other good and

Initials: _____ and _____

valuable consideration to Party # 1 Stoeckl for this Assignment.

**3.2**     Party # 2 represents that he will undertake and pursue civil and criminal claims which are intended to secure the return of the "Monies Paid / Wired", to secure the payment of damages and expenses and to identify and hold responsible all persons, entities, financial institutions and / or government agencies that were involved with and / or benefited from the "Monies Paid / Wired".

**3.3**     Party # 1 Stoeckl understands and agrees that (i) Party # 2 Fagan is not and will not offer legal advice to Party # 1 Stoeckl during the course of his work during this Assignment, (ii) Party # 1 Stoeckl has his own lawyer and / or has had a chance to consult with his own lawyer prior to entering into this Assignment.

## SECTION 4 – WARRANTY

**4.1**     For purposes of this Assignment, Party # 1 Stoeckl hereby warranties and confirms that has the absolute right to execute this assignment and that he will provide all reasonable cooperation with the Party # 2 Fagan to assist him in the performance of the obligations contained herein.

**4.2**     Insofar as legally permissible, any warranty as to Party # 2 Fagan's performance, success or results (other than Party # 2 Fagan's using its best efforts) to secure performance of the above contracts or to recover the advance fees paid or any other damages is disclaimed.

## SECTION 5 - OBLIGATION OF COOPERATION

Party # 1 Stoeckl agrees to cooperate with Party # 2 Fagan with regard to the preparation of declarations, statements or evidence needed for applications to regulatory, administrative, civil and criminal investigations.

## SECTION 6 - DUTY TO CONSULT & STRATEGIZE

Party # 2 Fagan agrees to consult and strategize with Party # 1 Stoeckl the efforts he will take in the performance of his obligations contained herein.  Party # 2 Fagan shall also consult and strategize with Party # 2 Stoeckl with regard to any responses and/or opposition to Party # 2 Fagan's efforts.

## SECTION 7 - WRITTEN FORM; CHOICE OF LAWS; SEVERABILITY

**7.1**     Amendments and addenda or corrections to this Assignment are not valid unless set forth in writing and notarized.

Initials: _SI_____ and ___/R___ ___DAT___                                    Page 3

**7.2** The Parties agree that this Assignment is governed by the laws of the United States and Canada and that in the event of any dispute related to this Assignment, the Court(s) of the United States and Canada shall both be deemed competent to hear and shall have jurisdiction over any dispute.

## SECTION 8 – DISPUTE RESOLUTION BINDING ARBITRATION

**8.1** In the event of a dispute between the parties, prior to being able to submit the dispute to a Court, the parties agree that the dispute must first be submitted for binding (and non-appealable) Arbitration in Canada or the United States, before the Canadian Arbitration Association ( https://canadianarbitrationassociation.ca/ ) or the American Arbitration Association – ( https://www.adr.org/ ) and arbitrators shall be chosen from the list of recognized and approved arbitrators from either of those two Associations.

**8.2** The arbitration shall be conducted in accordance with the Rules of the American Arbitration Society and/or the Canadian Arbitration Society, depending upon the choice of Arbitration Associations.

**8.3** In the event the dispute is submitted for Arbitration, the Arbitration shall be conducted and concluded within 6 months of the date it is submitted.

## SECTION 9 – MISCELLANEOUS PROVISIONS

**9.1** Should individual provisions or clauses of this Assignment be or become invalid in whole or in part, the remaining provisions hereof shall continue to apply. The Parties agree to act in good faith in replacing the invalid provision by agreeing upon a valid provision that most closely approximates the spirit and purpose of the invalid provision.

**9.2** Prior to executing this Assignment, each Party has had an opportunity to consult with his / their own counsel. This Assignment is made with full authority and knowledge of its terms, conditions and presents.

**9.3** It is agreed that Party # 1 Stoeckl shall pay Party # 2 Fagan limited / reduced consulting fees and reimbursement of expenses according to a budget that shall be agreed upon by them and any such fees and reimbursement of expenses by Party # 1 Stoeckl will only be payable after there has been a recovery of the "Monies Paid / Wired".

Initials: _____ and _____                                    Page **4**

## This Assignment is approved by the Parties as follows:

### Assignor – Party # 1

Dated: _JAN 18, 2019_
   Fort Saint John, British Columbia

_Anton Stoeckl_
   Anton W. Stoeckl

Notarized By:
Dated: _JAN 18/19_
   Fort Saint John, British Columbia

Print Name: _STEVEN COPE_
Address: _10740 - 100 S-_
   _FT ST JOHN. BC_

   Notary Seal

Tel #: _250 262 4333_
Email: _Cope@Keterbergleuce_

--------------------------------------------------

### Assignee – Party # 2

Edward D. Fagan accepts this Assignment according to the above terms / conditions.

Dated: _Jan. 18 2019_
   Boca Raton, Florida

_Edward D. Fagan_
   Edward D. Fagan

Notarized By:
Dated: _____
   Boca Raton, Florida

Print Name: _Edward D. Fagan_
Address: _590 NE Wavecrest Way_
   _Boca Raton, FL 33432_

   Notary Seal

Tel #: _561-400-0247_
Email: _Faganinternational@_
   _gmail.com_

Initials: _SX_ and _AE   At_                    Page 5

# ASSIGNMENT

## SECTION 1 - THE PARTIES

### Party # 1 – Mark Meier - Assignor

Mark Meier (D/O/B  _3/22/1954_  located at 13593 Meier Road, Charlie Lake, BC V0C 1H0 – CANADA individually (hereinafter "Meier" or "Party # 1") is the owner of 100% of interests and rights to recovery and ownership of certain claims for recovery of monies that were paid and sent by international wire transfers between 2016 to 2018 to various persons, entities, governmental institutions and financial institutions and which monies (hereinafter "Monies Paid / Wired") were paid and sent from, to and through certain banks and financial institutions located in Canada, the United States and elsewhere in the world as part of the purchase and recovery and acquisition of various assets including but not limited to estate assets, real property, leases, contract rights, outstanding contract revenue, personal property, unpaid but earned income, pension and retirement plans, monies held in bank accounts, assets deposited into safe deposit boxes and vaults and other real and personal property and assets and which "Monies Paid / Wired" certain third parties in bank accounts including but not to the below listed institutions and other persons / entities who / which assisted with the transfer of monies:

#### Bank and Financial Institutions Involved :

Bank of America, Bank of Montreal, Barclays, BNP Paribas, Canadian Imperial Bank of Commerce, Citibank, Chase (JP Morgan Chase), Compass Bank, Credit Registry Corp (United Bank of Africa), East West Bank, Fidelity Investments, Forte – Equity Bank, Huntington National Bank, Money Gram, MUFG Union Bank, PNC Bank, Royal Bank of Canada, Scotia Bank, Sun Trust, TD Bank, USAA, Western Union, Wells Fargo, Zhejiang Tailong Commercial Bank, The World Bank and other sending intermediary, receiving and transferor/transferee banks and institutions as may be identified in the future.

#### Other Persons / Entities or Institutions :

Internet / Domain Service Providers, Lawyers, Government or Quasi-Government Agencies, Transportation Companies, Insurance Companies and such other persons / entities that were involved with the solicitation, sending and receiving of the "Monies Paid / Wired"

### Party # 2 - Edward D. Fagan - Assignee

Edward D. Fagan (D/O/B: 20/10/52) residing at 590 NE Wavecrest Way, Boca Raton, FL 33432 and US Passport # 505608731 (hereinafter "Assignee" or "Party # 2").

## SECTION 2 - ASSIGNOR & ASSIGNEE

**2.1**     Party # 1 Meier hereby assigns to Party # 2 Fagan the absolute right and authority to take actions indicated below on behalf of 100 % of Meier's interests in the recovery

Initials: _____ and _____                                           Page 1

of the "Monies Paid / Wired" as described in Section 1.1 above and (i) to file administrative, regulatory, civil and criminal complaints; (ii) to make claims related to recovery of monies paid and transferred; (iii) to make claims to compel identification of the undisclosed parties to whom the paid and transferred monies may have been subsequently transferred by the banks and/or persons identified to date; and (iv) to make claims against the banks and other persons/institution who/which were involved with and or benefitted from the "Monies Paid / Wired".

2.2     Upon the successful conclusion of efforts and/or claims as explained above related to recovery of "Monies Paid / Wired" or when any portion of the "Monies Paid / Wired", plus interest and other damages, are returned, Party # 2 Fagan and Party # 1 Meier agree that recovered monies, plus any additional interest and/or other damages, shall be deposited into a Trust or Escrow account of a mutually agreed upon lawyer or accountant in Fort Saint John, British Columbia and the monies shall be retained in such Trust or Escrow account until the parties agree upon division of the recovered monies and payment of any unpaid fees and expenses incurred.

2.3     Upon the successful recovery of "Monies Paid / Wired", plus any additional interest and other damages, the parties further agree that they shall meet, discuss and agree upon an equitable and fair division of any additional monies and assets that may be recovered.

2.4     The assignment shall take effect as of this date and shall last up to and including

_____.

2.5     Party # 2 Fagan agrees to use his best efforts and diligence to pursue persons, entities, financial institutions, government institutions and others involved with "Monies Paid / Wired" and (i) locate and identify the entities responsible for and/or involved with the above referenced "Monies Paid / Wired", (ii) compel the return of "Monies Paid / Wired", plus appropriate interest and other damages and (iii) compel compliance of the return of other assets for which the "Monies Paid / Wired" were transferred, wired and paid.

2.6     Party # 1 Meier and Party # 2 Fagan shall agree upon a budget and payment of all ongoing fees, expenses and costs associated with the above stated purposes. Any fees, expenses and costs that may be incurred and which have not been agreed to by the Parties shall be borne exclusively by the Party who / which was responsible for incurring the fees, expenses and costs that were not included in the agreed upon budget.

2.7     This assignment is personal to Fagan and may NOT re-assigned to third parties or others without the prior written consent of Party 1.

## SECTION 3 – CONDITION(S)

3.1     Party # 2 Fagan has paid ten dollars (USD) and has provided other good and

Initials: _____ and _____                                          Page 2

valuable consideration to Party # 1 Meier for this Assignment.

    **3.2**    Party # 2 represents that he will undertake and pursue civil and criminal claims which are intended to secure the return of the "Monies Paid / Wired", to secure the payment of damages and expenses and to identify and hold responsible all persons, entities, financial institutions and / or government agencies that were involved with and / or benefited from the "Monies Paid / Wired".

    **3.3**    Party # 1 Meier understands and agrees that (i) Party # 2 Fagan is not and will not offer legal advice to Party # 1 Meier during the course of his work during this Assignment, (ii) Party # 1 Meier has his own lawyer and / or has had a chance to consult with his own lawyer prior to entering into this Assignment.

## SECTION 4 – WARRANTY

    **4.1**    For purposes of this Assignment, Party # 1 Meier hereby warranties and confirms that has the absolute right to execute this assignment and that he will provide all reasonable cooperation with the Party # 2 Fagan to assist him in the performance of the obligations contained herein.

    **4.2**    Insofar as legally permissible, any warranty as to Party # 2 Fagan's performance, success or results (other than Party # 2 Fagan's using its best efforts) to secure performance of the above contracts or to recover the advance fees paid or any other damages is disclaimed.

## SECTION 5 - OBLIGATION OF COOPERATION

    Party # 1 Meier agrees to cooperate with Party # 2 Fagan with regard to the preparation of declarations, statements or evidence needed for applications to regulatory, administrative, civil and criminal investigations.

## SECTION 6 - DUTY TO CONSULT & STRATEGIZE

    Party # 2 Fagan agrees to consult and strategize with Party # 1 Meier the efforts he will take in the performance of his obligations contained herein.  Party # 2 Fagan shall also consult and strategize with Party # 2 Meier with regard to any responses and/or opposition to Party # 2 Fagan's efforts.

## SECTION 7 - WRITTEN FORM; CHOICE OF LAWS; SEVERABILITY

    **7.1**    Amendments and addenda or corrections to this Assignment are not valid unless set forth in writing and notarized.

Initials: /MRM/ and ____/k____               Page 3

**7.2** The Parties agree that this Assignment is governed by the laws of the United States and Canada and that in the event of any dispute related to this Assignment, the Court(s) of the United States and Canada shall both be deemed competent to hear and shall have jurisdiction over any dispute.

## SECTION 8 – DISPUTE RESOLUTION BINDING ARBITRATION

**8.1** In the event of a dispute between the parties, prior to being able to submit the dispute to a Court, the parties agree that the dispute must first be submitted for binding (and non-appealable) Arbitration in Canada or the United States, before the Canadian Arbitration Association ( https://canadianarbitrationassociation.ca/ ) or the American Arbitration Association – ( https://www.adr.org/ ) and arbitrators shall be chosen from the list of recognized and approved arbitrators from either of those two Associations.

**8.2** The arbitration shall be conducted in accordance with the Rules of the American Arbitration Society and/or the Canadian Arbitration Society, depending upon the choice of Arbitration Associations.

**8.3** In the event the dispute is submitted for Arbitration, the Arbitration shall be conducted and concluded within 6 months of the date it is submitted.

## SECTION 9 – MISCELLANEOUS PROVISIONS

**9.1** Should individual provisions or clauses of this Assignment be or become invalid in whole or in part, the remaining provisions hereof shall continue to apply. The Parties agree to act in good faith in replacing the invalid provision by agreeing upon a valid provision that most closely approximates the spirit and purpose of the invalid provision.

**9.2** Prior to executing this Assignment, each Party has had an opportunity to consult with his / their own counsel. This Assignment is made with full authority and knowledge of its terms, conditions and presents.

**9.3** It is agreed that Party # 1 Meier shall pay Party # 2 Fagan limited / reduced consulting fees and reimbursement of expenses according to a budget that shall be agreed upon by them and any such fees and reimbursement of expenses by Party # 1 Meier will only be payable after there has been a recovery of the "Monies Paid / Wired".

Initials: _____ and _____                                            Page 4

## **This Assignment is approved by the Parties as follows:**

**Assignor – Party # 1**

Dated: ___JAN 18/19___

     Fort Saint John, British Columbia                            Mark Meier

Notarized By:

Dated: ___JAN 18/19___

     Fort Saint John, British Columbia      Print Name: ___STEVEN COPE___

                                          Address: ___1040 100 S___

                                               ___FT ST JOHN. BC___

            Notary Seal                  Tel #: ___250 263 4333___

                                                 Email: ___cope@ketenburglev.cp___

---------------------------------------------

**Assignee – Party # 2**

Edward D. Fagan accepts this Assignment according to the above terms / conditions.

Dated: ___Jan. 18 2019___

     Boca Raton, Florida                            Edward D. Fagan

Notarized By:

Dated: _____

     Boca Raton, Florida               Print Name: ___Edward D. Fagan___

                                           Address: ___590 NE Wavecrest Way___

                                               ___Boca Raton, FL 33432___

           Notary Seal                  Tel #: ___561-400-0287___

                                               Email: ___faganinternational@___

                                                                      ___gmail.com___

Initials: ___and___                                                               Page 5

# EXHIBIT 3

*A2/1*

## RW Daneluk Inc.

| | |
|---|---|
| **From:** | paul corkum [paulcorkum@hotmail.com] |
| **Sent:** | April 04, 2018 5:20 AM |
| **To:** | Russ Daneluk |
| **Subject:** | Fwd: Draft processed. |

Sent from my iPhone

Begin forwarded message:

> **From:** Chase Bank <chaseheadquarters@draftissue.com>
> **Date:** April 4, 2018 at 8:16:26 AM EDT
> **To:** paulcorkum@hotmail.com
> **Subject: Draft processed.**
> **Reply-To:** Chase Bank <chaseheadquarters@draftissue.com>

Greetings,

    This is to notify you that we have received the full payment for the re-issue of your bank draft and it would be processed accordingly.

    The bank draft is scheduled to be sent out by the 11th of April 2018, and your recipient in Florida would get it on or before the 17th of April 2018.

    Your delivery would be made by Deutche Post (DHL), and we have been informed by them that upon the delivery of the draft to the recipient, they would require a Florida tax payment of $5,650 before releasing the draft to the reciepient.

    So you are to inform the recipient to have a USA bank draft of $5,650 ready for DHL upon the delivery. As soon as we have you draft sent out, a notification email would be sent to you.



## CHASE

Kind Regards,

**Martin Graham.**

A2/2

**RU Daneluk Inc.**

**From:** paul corkum [paulcorkum@hotmail.com]
**Sent:** Saturday, August 05, 2017 5:05 PM
**To:** Russ@daneluk.com

**Secure Connection**

**Menu Button**
- Balance Field
- Wire Fund
- Edit Profile
- Change PIN

**Welcome: PAUL CORKUM**

Account No:  6088673899

**Pending Balance:** $0.00

**Available Balance:** $27,108,000.00

Account Balance:  $27,108,000.00

**Dash Board**

**Supervisor:** Mr. DAVID A LEWIS

**Beneficiary:**

**Next Of Kin:** KARI PETERS

Client Info: You received $20,000,000 from JP MORGAN CHASE BANK on 08/05/2017

Home
©2016 BGL BNP Paribas

Sent from Mail for Windows 10

1

**RW Daneluk Inc.**

| | |
|---|---|
| **From:** | paul corkum [paulcorkum@hotmail.com] |
| **Sent:** | April 16, 2018 5:31 AM |
| **To:** | Russ Daneluk |
| **Subject:** | 123_1.jpg |

**HSBC ⊠**

VERIZON WIRELESS
REMITTER

**CASHIER'S CHECK**

DATE 04/12/2018

US DOLLAR DRAFT
(CASHIER'S CHECK)
No. 104722108

5,650.00
U.S. DOLLARS

750-125
223

PAY Five Thousand Six Hundred Fifty Dollars And No Cents

TO
THE
ORDER
OF    DEUTSCHE POST (DHL)

Drawer:HSBC BANK USA. N.A.

_AUTHORIZED SIGNATURE_

_AUTHORIZED SIGNATURE_

Payable through HSBC Bank USA, N.A.

⑈104722108⑈ ⑆022301253⑈ 713010975⑈

Sent from my iPhone

1

A2/4

## RW Daneluk Inc.

| | |
|---|---|
| **From:** | paul corkum [paulcorkum@hotmail.com] |
| **Sent:** | April 13, 2018 6:15 AM |
| **To:** | Russ Daneluk |
| **Subject:** | {Spam?} Fwd: Bank Draft |

Sent from my iPhone

Begin forwarded message:

> **From:** Chase Bank <chaseheadquarters@draftissue.com>
> **Date:** April 13, 2018 at 9:09:27 AM EDT
> **To:** russ@daneluk.com
> **Cc:** paulcorkum@hotmail.com, dlewis5515@gmail.com
> **Subject: Bank Draft**
> **Reply-To:** Chase Bank <chaseheadquarters@draftissue.com>

Greetings,

   Thanks Russell for contacting the chase department of inheritance and estates disbursement. After thoroughly going through your document regarding the money spent on the Mr Peter Grant inheritance, we found out that several wires were sent to various individuals for one main purpose, which is to secure the release of the inheritance payment.

   This is to confirm that all the bills that was required by financial institutions and governmental agencies have been duly paid, however on the inheritance assessment that was sent to us by the inheritance advisor Mr. David Lewis, their is a huge gap present within the figures you sent and the figures we received from Mr David Lewis as the expenditure costs. In the next paragraphs, I would break down in segments the reason why we are encountering this at this last stage and possible solutions.

## IMPORTANCE OF INHERITANCE EXPENDITURE CERTIFICATE:

It is a common law in the United States that inheritance are not taxable, however their are various charges and payments that are required by financial institution and governmental agencies which are called **Inheritance Expenditure** in other to liquidate estates and IRA into physical cash. Usually heir to inheritances of this such amount, usually outsource the expenditure payments to banks, wealthy individuals or investment companies, to take part in the spending spree of the expenses, which automatically gives them right to the inheritance.

Mr Paul Corkum was considered to be a part of this inheritance because he took up the expenditure in order to liquidate the estates and IRA. In addition, he didn't just took the expenditure part, he wants the draft issued out in his name, which is not a problem as long as Miss Kari is aware of it, which she does and gave her consent to that.

Now here is the importance of the inheritance expenditure certificate: The inheritance expenditure certificate is sent out with payment draft, because it serves as the immunity that covers the payment draft from been tax by any bank or government when the funds is been credited into an account. This expenditure certificate is also been lodged at the United States FDIC, with the names of Paul and Kari, so they would be exempted from money laundering allegations when the funds is credited to their account.

**THE PROBLEM:**

The expenditure amount Mr David Lewis submitted to the board was totaled to $3,500,000.00USD and upon calculating the figures you sent, it was approximated to $2,275,000.00USD. There is a huge contradicting difference of $1,225,000.00USD. The reason this calls for a concern is that the inheritance board already put the total expenditure on this inheritance at the amount Mr David Lewis sent initially, and all that was need were the payment slips to actualize the expenditure amount, hence the reason for the requirement of all payslips.

**THE SOLUTION:**

Their are two ways to how we can solve this issue.

(1) To find all the payment slips of the balance of $1,225,000.00USD and have it sent, so we can finalise the report and have the bank draft and the certificate posted to the address provided,

or

(2) To send us a change of information statement, written on your CPA letterhead and stating the actual amount spent in total towards the release of this inheritance and providing payment slips to back it up. Kindly note that your change of information statement must be confirmed by oath of affirmation from a lawyer practicing in the New York state of America.

Since you are in Canada, we can the handle the litigation aspect for you here in New York at a fee of $36,000.00. All you need to send us would just be the change of information statement on your letterhead and our inheritance law department would handle the litigation aspect.

*A2/6*

Upon receiving this, your draft would be securely sent out. Do not hesitate to contact me back via email if you need further questions or assistance.



Kind Regards,

**Martin Graham.**

Head of Operations

Chase bank wire and draft center hub.

270 Park Avenue

New York, NY 10017

A2/7

## RW Daneluk Inc.

| | |
|---|---|
| **From:** | Kenneth Corkum [krc64@icloud.com] |
| **Sent:** | April 17, 2018 9:26 AM |
| **To:** | Russ Daneluk |
| **Subject:** | Fwd: Bank Draft |

*[handwritten note: Phone Paul - 7:30 - It appears that no matter what we send them - they are going to take us Dr. to $36.000 (almost 50.000) he agreed - so lets have to money and tell them to go to hell ☺]*

Sent from Ken's iPad

Begin forwarded message:

**From:** Chase Bank <chaseheadquarters@draftissue.com>
**Date:** April 16, 2018 at 10:17:09 AM MST
**To:** russ@daneluk.com
**Cc:** paulcorkum@hotmail.com, dlewis5515@hotmail.com, krc64@icloud.com
**Subject:** RE: Bank Draft
**Reply-To:** Chase Bank <chaseheadquarters@draftissue.com>

Greetings to All,

Thanks for your comments Mr. Russell, its my duty to explain fully all your questions until we are all satisfied. The $340,000.00 that was paid by paribas bank to the tax office was the taxes owed by Mr. Grant Peters on is Early IRA distribution before he was late. Let me explain quickly how the estates was accumulated into $27,000,000.00 USD.

The late Grant Peter's estate was accumulated as a result of his Individual Retirement Account ($7,000,000.00USD) and his estates in Virginia and New York USA ($20,000,000.00USD). The $340,000.00 tax Payment was paid by paribas bank to cover for the early IRA distributions Mr Grant made while he was alive. This tax payment has nothing to do with the inheritance, but was billed because the IRA has been inherited by Kari and Paul, and due to the change of name the tax owed must be paid.

Inheritance funds are not taxable, however, the reason for the $340,000.00 payment has been expressed above and it has nothing to do with the release of estates. If you check the tax document issued, you would see the payment was addressed to Mr. Grant.

Regarding the $7,000,000.00 Cash in Nigeria this is very strange as there was no money of such in Nigeria. Mr Grant had no ties or business activities in Nigeria, all his activities were done from USA and Europe. You said the amount came to Mr Paul in cash, if it did got to him, then how did the funds left his possession? this is really confusing. The $7,000,000.00 was held at Barclays bank, and we requested that its been sent to our care and it was. Its as simple as that.

A2/8



Kind Regards,

**Martin Graham.**

Head of Operations

Chase bank wire and draft center hub.

270 Park Avenue

New York, NY 10017

2

17 2 / 9

## RW Daneluk Inc.

**From:** Chase Bank [chaseheadquarters@draftissue.com]
**Sent:** April 16, 2018 5:07 AM
**To:** russ@daneluk.com
**Cc:** paulcorkum@hotmail.com; dlewis5515@gmail.com
**Subject:** Bank Draft

Greetings Russell,


Thanks for your email over the weekend, sorry for the late in reply. I have review the new figures you sent to me and according to my understanding, the original total amount spent according to your calculations towards the release of this inheritance funds by your clients is $4,484,231 USD, which is about $984,231 USD greater than the initial amount of $3,500,000.00 David Lewis sent to the board.


**Below is the deficiency in calculations:**


**Amount Spent according to David Lewis:**          $3,500,000.00USD

                                                              +

**Additional amount by Russell Daneluk inc:**       $984,231.00USD.

                                                              =

**Total amount spent according to Russell Daneluk inc: $4,484,231.00 USD**

                                                              -

**Total payslips amount in our record as of 04/13/18 :**   $2,275,000.00USD

                                                              =

**Total discrepancy as of 04/16/18:**                 $2,209,231.00USD

----------------------------------------------------------------------------------------
----------------------------------

## Appendix Schedule A:

It was stated that David Lewis made a total payment of $1,140,000.00 out of the Paribas bank. However, the only acceptable payment from appendix A, is the $550,000.00 USD, that was sent to Spain to support the family of the Late Clara Peters.

This fund was withdrew on the directive of both Mr Paul and Miss Kari to support the family of Kari's sister whom is also an heir to the inheritance, but was paid off due to the adjustment of the will.

All other payment as stressed in appendix A, are not pertaining to the release of this inheritance funds, they are payment made on the directive of Mr Paul to Miss Kari for other expenses not relating to this particular inheritance funds.

Due to this explanation the only amount that can be put in to account as per solved discrepancy in appendix schedule A, is the $550,000 USD that was expressed above. Hence, appendix A is in a deficiency of $590,000.00 USD.

## Appendix Schedule B:

It was stated in Appendix schedule B, that $18,000 was sent to Fidelity investment, this is another financial institution not relating to this inheritance funds, again, this seem like a payment that was made for a total different release of fund. This expense is therefore discountenance.

## Appendix Schedule C and D:

The wire sent by an associate called Malcolm Stewart in the amount of $165,511.00 and $5,000 USD has been successfully put in to account as an expense towards the release of the inheritance funds. Appendix C and D is therefore accepted by the Board as an expenditure.

## Appendix Schedule E:

In accordance to appendix Schedule E, we don't understand why certain funds were sent to Nigeria, as the inheritance as nothing to do with Nigeria. The estate was domiciled in United States and payments to Nigeria as no correlation with the inheritance. Payment regarding this inheritance started in November of 2016, when Mr Paul Corkum was contacted by Forte Equity Paribas bank. Payments starting from July of 2016 to Nigeria are not understandable to us, as this may be payment sent for other purposes and not in regards to this inheritance. In regards to this, the Appendix Schedule E cannot be acceptable.

## Appendix Schedule F:

According to the **Russell Daneluk Inc**, $750,000.00 USD was the amount charged to Mr Paul Corkum for accounting services regarding this inheritance. I deeply regret informing you that we can't accept this as an expenditure towards the release of the draft, as this are personal expenditure between **Russell Daneluk Inc and Corkum**. This amount is been paid to a non United States tax paying organisation, and therefore is not acceptable in the United States as part of an inheritance expenditure.

A2/11

## CURRENT CALCULATIONS:

| | |
|---|---|
| **Total acceptable amount spent :** | $3,500,000.00 USD |
| | - |
| **Total payslips amount in our record as of 04/13/18 :** | $2,275,000.00 USD |
| | - |
| **Total accepted discrepancy as of 04/16/18:** | $720,511.00   USD |
| | = |
| **Total unbalanced discrepancy:** | $504,489.00   USD |

---------------------------------------------------------------------------------------------------------------------
---------------------------------------

In my opinion, some amounts of money was paid out in order to secure the release of other estates of Mr. Grant Peters. This payments are not applicable to us as we are just releasing the $27,000,000.00 of Grant Peter estate and we only take to accounts payments applicable to this particular estate.

At this point no further payments slip would be acceptable from you as we have received all your payment slips and note the ones applicable to us. You are therefore required to either send a payment of the unbalanced discrepancy directly into the inheritance account so as to balance the inheritance expenditure.

OR

Cap the expenditure to $2,995,511.00 USD. You can do this by sending me all the expenditure we have accepted on your letter head and email it back to me. Upon receiving the email from you, a payment of $36,000.00 USD would be required in form of any United States bank draft through Forte equity Paribas bank to us. This payment is to handle the cost of litigation as to the change of information.

Once this is done, your draft would be duly sent out with the inheritance expenditure certificate. You have till the 20th of April, 2018 to make a decision. By the 24th of April, 2018 the already issued draft would be canceled, due to inappropriate expenditure and would be sanctioned and investigated for misappropriate expenditure conduct.

A2/12



**CHASE**

Kind Regards,

**Martin Graham.**

Head of Operations

Chase bank wire and draft center hub.

270 Park Avenue

New York, NY 10017

A2/13

## RW Daneluk Inc.

**From:** Chase Bank [chaseheadquarters@draftissue.com]
**Sent:** April 19, 2018 9:24 AM
**To:** RW Daneluk Inc.
**Cc:** Kenneth Corkum; paulcorkum@hotmail.com; dlewis5515@gmail.com
**Subject:** Re: Grant Peters Estate

Thanks for your response Mr Russell, this is not the right way to send me the document i requested. You are to put into account all the payments that we acknowledged. Just like the previous email you have sent, make all the payment in a tabular for with the amount send and everything totaled to the agreed amount. Once that is done, then you can add a cover note with it.

On April 19, 2018 at 9:27 PM "RW Daneluk Inc." <russ@daneluk.com> wrote:

Please find attached the letter you require from me re the Grant Peters Estate

*Russell W. Daneluk, CPA, CA*

R.W. DANELUK INC.
Suite 300, 10504 - 100th Avenue
Fort St John, BC V1J 1Z2
Phone: 250-785-2220
Fax: 250-785-2213

This email communication is intended as a private communication for the sole use of the primary addressee and those individuals listed for copies in the original message. The information contained in this email is private and confidential and if you are not an intended recipient you are hereby notified that copying, forwarding or other dissemination or distribution of this communication by any means is prohibited. If you are not specifically authorized to receive this email and if you believe that, you received it in error, please notify the original sender immediately. We honor similar requests relating to the privacy of email communications

A2/14

## RW Daneluk Inc.

**From:**        Chase Bank [chaseheadquarters@draftissue.com]
**Sent:**        April 19, 2018 9:24 AM
**To:**          RW Daneluk Inc.
**Cc:**          Kenneth Corkum; paulcorkum@hotmail.com; dlewis5515@gmail.com
**Subject:**     Re: Grant Peters Estate

Thanks for your response Mr Russell, this is not the right way to send me the document i requested. You are to put into account all the payments that we acknowledged. Just like the previous email you have sent, make all the payment in a tabular for with the amount send and everything totaled to the agreed amount. Once that is done, then you can add a cover note with it.

On April 19, 2018 at 9:27 PM "RW Daneluk Inc." <russ@daneluk.com> wrote:

Please find attached the letter you require from me re the Grant Peters Estate

*Russell W. Daneluk, CPA, CA*

R.W. DANELUK INC.
Suite 300, 10504 - 100th Avenue
Fort St John, BC V1J 1Z2
Phone: 250-785-2220
Fax: 250-785-2213

This email communication is intended as a private communication for the sole use of the primary addressee and those individuals listed for copies in the original message. The information contained in this email is private and confidential and if you are not an intended recipient you are hereby notified that copying, forwarding or other dissemination or distribution of this communication by any means is prohibited. If you are not specifically authorized to receive this email and if you believe that, you received it in error, please notify the original sender immediately. We honor similar requests relating to the privacy of email communications

A2/15

## RW Daneluk Inc.

**From:** Chase Bank [chaseheadquarters@draftissue.com]
**Sent:** April 23, 2018 4:47 AM
**To:** russ@daneluk.com
**Cc:** paulcorkum@hotmail.com; krc64@icloud.com; dlewis5515@gmail.com
**Subject:** Fwd: RE: Bank Draft

Good Morning to All,

The document requested is well received and it has been updated to our systems. The litigation process to effect the change would commence today. The affidavit would be ready by Thursday or Friday, a copy of it would be sent to everyone, and would require Mr Paul Corkum's signature.

Once the affidavit as been signed and returned back to us, a copy of it and the expenditure report you sent us would be forwarded to the FDIC to issue us with the Inheritance expenditure certificate. The certificate takes about 3-5 business days to be issued out. So in all, the draft and the certificate should be ready for dispatch in another 10 working days give or take.

Kind Regards.



Kind Regards,

**Martin Graham.**

Head of Operations

Chase bank wire and draft center hub.

270 Park Avenue

New York, NY 10017

A2/16

.Auk Inc.

| | Chase Bank [chaseheadquarters@draftissue.com] |
|---|---|
| | April 27, 2018 7:59 AM |
| cc: | paulcorkum@hotmail.com |
| Subject: | russ@daneluk.com; krc64@icloud.com; dlewis5515@gmail.com |
| Attachments: | {Spam?} AFFIDAVIT |
| | SWORN AFFIDAVIT.pdf |

Greetings,

Kindly find the attached affidavit requiring your signature at the appendix. It would be beneficial if you can print just the signature place, sign and have it scanned back to us today. We are hoping to have it sent back to FDIC for processing of the inheritance certificate as soon as possible.

Kind Regards.



Kind Regards,

**Martin Graham.**

Head of Operations

Chase bank wire and draft center hub.

270 Park Avenue

New York, NY 10017

A2/17



UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF ALBANY, NEW YORK.

| | |
|---|---|
| J.P MORGAN CHASE BANK N.A | CIVIL ACTION NO. 1:88cv-607 |
| Plaintiff | |
| -vs- | |
| Mr. PAUL CORKUM and Miss. KARI PETERS | |
| Defendants | |

*H2/18*

## AFFIDAVIT

I, Mr. PAUL CORKUM, of WENDOVER, in TORONTO, CANADA, MAKE OATH AND SAY THAT:

1. THAT THE INHERITANCE EXPENDITURE AMOUNT SPENT IS $2,995,511.00. USD

2. THAT I AM ALSO A BENEFICIARY TO THE GRANT PETERS ESTATE.

3. THAT IN THE CASE OF DISSOLVE WITH KARI PETERS, I OWN 50% OF THE TOTAL VALUE OF THE ESTATE AND KARI PETERS OWN 50%.

4. THAT I WANT THE FEDERAL DEPOSIT INSURANCE CORPORATION, TO ISSUE MY INHERITANCE CERTIFICATE.

5. THAT THE INHERITANCE AMOUNT TO BE RELEASED IS TOTALED AT $27,000,000.00 USD.

STATE OF NEW YORK

COUNTY OF ALBANY

SUBSCRIBED AND SWORN TO BEFORE ME, on the 27th day of April, 2018

_____
(Signature)
Miss. KARI PETERS

A2/19



_____
(Signature)
Mr. PAUL CORKUM

SIGNATURE and
NOTARY PUBLIC
My Commission expires: **MAY 21ST 2020**



A2/20

**From:** Chase Bank <chaseheadquarters@draftissue.com>
**Date:** August 3, 2018 at 3:06:08 PM EDT
**To:** paulcorkum@hotmail.com
**Subject: Important Notification**
**Reply-To:** Chase Bank <chaseheadquarters@draftissue.com>

Greetings,

We have been notified by Bank of America, North Carolina, that your
business with them is complete and we should release your payment draft.
Your payment is ready to be released immediately, however your issued
draft has gotten dormant has the release date has been over 28 days. In
order for your draft for immediate release, we require a re-activation
payment of $15,285 from you. As soon as this payment is made to us, your
draft would be ready for dispatch 48 hours. Kindly note that if we don't
hear back from you in a few days, we would assume you are not ready to
have your draft yet, and the re-activation funds increases every 28 calendar
days.



Kind Regards,

**Martin Graham.**

Head of Operations

Chase bank wire and draft center hub.

270 Park Avenue

New York, NY 10017

**RW Daneluk Inc.**

| | |
|---|---|
| From: | |
| Sent: | paul corkum [paulcorkum@hotmail.com] |
| To: | April 04, 2018 5:20 AM |
| Subject: | Russ Daneluk |
| | Fwd: Draft processed. |

Sent from my iPhone

Begin forwarded message:

> **From:** Chase Bank <chaseheadquarters@draftissue.com>
> **Date:** April 4, 2018 at 8:16:26 AM EDT
> **To:** paulcorkum@hotmail.com
> **Subject: Draft processed.**
> **Reply-To:** Chase Bank <chaseheadquarters@draftissue.com>
>
> Greetings,
>
> This is to notify you that we have received the full payment for the re-issue of your bank draft and it would be processed accordingly.
>
> The bank draft is scheduled to be sent out by the 11th of April 2018, and your recipient in Florida would get it on or before the 17th of April 2018.
>
> Your delivery would be made by Deutche Post (DHL), and we have been informed by them that upon the delivery of the draft to the recipient, they would require a Florida tax payment of $5,650 before releasing the draft to the recipient.
>
> So you are to inform the recipient to have a USA bank draft of $5,650 ready for DHL upon the delivery. As soon as we have you draft sent out, a notification email would be sent to you.



**CHASE**

Kind Regards,

**Martin Graham.**

1

A2/22

**RW Daneluk Inc.**

| | |
|---|---|
| **From:** | paul corkum [paulcorkum@hotmail.com] |
| **Sent:** | April 13, 2018 6:15 AM |
| **To:** | Russ Daneluk |
| **Subject:** | {Spam?} Fwd: Bank Draft |

Sent from my iPhone

Begin forwarded message:

> **From:** Chase Bank <chaseheadquarters@draftissue.com>
> **Date:** April 13, 2018 at 9:09:27 AM EDT
> **To:** russ@daneluk.com
> **Cc:** paulcorkum@hotmail.com, dlewis5515@gmail.com
> **Subject: Bank Draft**
> **Reply-To:** Chase Bank <chaseheadquarters@draftissue.com>
>
> Greetings,
>
>
>    Thanks Russell for contacting the chase department of inheritance and estates disbursement. After thoroughly going through your document regarding the money spent on the Mr Peter Grant inheritance, we found out that several wires were sent to various individuals for one main purpose, which is to secure the release of the inheritance payment.
>
>    This is to confirm that all the bills that was required by financial institutions and governmental agencies have been duly paid, however on the inheritance assessment that was sent to us by the inheritance advisor Mr. David Lewis, their is a huge gap present within the figures you sent and the figures we received from Mr David Lewis as the expenditure costs. In the next paragraphs, I would break down in segments the reason why we are encountering this at this last stage and possible solutions.

## IMPORTANCE OF INHERITANCE EXPENDITURE CERTIFICATE:


It is a common law in the United States that inheritance are not taxable, however their are various charges and payments that are required by financial institution and governmental agencies which are called **Inheritance Expenditure** in other to liquidate estates and IRA into physical cash. Usually heir to inheritances of this such amount, usually outsource the expenditure payments to banks, wealthy individuals or investment companies, to take part in the spending spree of the expenses, which automatically gives them right to the inheritance.

172/23

Mr Paul Corkum was considered to be a part of this inheritance because he took up the expenditure in order to liquidate the estates and IRA. In addition, he didn't just took the expenditure part, he wants the draft issued out in his name, which is not a problem as long as Miss Kari is aware of it, which she does and gave her consent to that.

Now here is the importance of the inheritance expenditure certificate: The inheritance expenditure certificate is sent out with payment draft, because it serves as the immunity that covers the payment draft from been tax by any bank or government when the funds is been credited into an account. This expenditure certificate is also been lodged at the United States FDIC, with the names of Paul and Kari, so they would be exempted from money laundering allegations when the funds is credited to their account.

**THE PROBLEM:**

The expenditure amount Mr David Lewis submitted to the board was totaled to $3,500,000.00USD and upon calculating the figures you sent, it was approximated to $2,275,000.00USD. There is a huge contradicting difference of $1,225,000.00USD. The reason this calls for a concern is that the inheritance board already put the total expenditure on this inheritance at the amount Mr David Lewis sent initially, and all that was need were the payment slips to actualize the expenditure amount, hence the reason for the requirement of all payslips.

**THE SOLUTION:**

Their are two ways to how we can solve this issue.

(1) To find all the payment slips of the balance of $1,225,000.00USD and have it sent, so we can finalise the report and have the bank draft and the certificate posted to the address provided,

or

(2) To send us a change of information statement, written on your CPA letterhead and stating the actual amount spent in total towards the release of this inheritance and providing payment slips to back it up. Kindly note that your change of information statement must be confirmed by oath of affirmation from a lawyer practicing in the New York state of America.

Since you are in Canada, we can the handle the litigation aspect for you here in New York at a fee of $36,000.00. All you need to send us would just be the change of information statement on your letterhead and our inheritance law department would handle the litigation aspect.

*A2/24*

Upon receiving this, your draft would be securely sent out. Do not hesitate to contact me back via email if you need further questions or assistance.



**CHASE**

Kind Regards,

**Martin Graham.**

Head of Operations

Chase bank wire and draft center hub.

270 Park Avenue

New York, NY 10017

*Ad/as*

**R.W. Daneluk**

| | |
|---|---|
| **From:** | paul corkum <paulcorkum@hotmail.com> |
| **Sent:** | Tuesday, August 14, 2018 7:19 AM |
| **To:** | Russ Daneluk |
| **Subject:** | Fwd: Important Notification |

Sent from my iPhone

Begin forwarded message:

> **From:** Chase Bank <chaseheadquarters@draftissue.com>
> **Date:** August 14, 2018 at 10:17:25 AM EDT
> **To:** paulcorkum@hotmail.com
> **Subject: Important Notification**
> **Reply-To:** Chase Bank <chaseheadquarters@draftissue.com>
>
> Greetings,
>
>
> Thank for sending J.P Morgan Chase Bank N.A your re-activation payment, it has been duly received. However, your payment has lapsed the require date of the 28 days window. Our systems would not process your payment draft if its over the time frame you are required to make your payment. In this case you are supposed to make another re-activation payment, but we have waived off 50% of the payment for you, if you can make a late payment fee of  $7,642.5 USD on or before 17th of August, 2018.
>
>
> For your draft to be processed by our disbursement team for the month of August, you are required to send us a late payment of $7,642.5 USD on or before the 17th of August, 2018, in order for your disbursement to be eligible for the next draft processing. For example, if we receive this payment on 17th August, 2018, your payment draft would be processed and delivered to your designated address between the 22nd and 23rd of August, 2018.

*112/26*

**From:** Chase Bank <chaseheadquarters@draftissue.com>
**Sent:** Thursday, August 30, 2018 8:03 AM
**To:** paulcorkum@hotmail.com
**Cc:** rickdquigley@gmail.com
**Subject:** Cashier Check Issued

Greetings,

We have issued out a Cashier's Check for your disbursement. Our nominated courier service which is Deutsche Post (DHL) is scheduled to pick your check on 4th of September, 2018, and should be delivered on or before 7th of September 2018.

Kindly note that your cashier check can be cashed at any Bank and Cash Plus center across the United States click on the link below to follow up on associated advice with your Cashier's Check.

**Funds follow up**



Kind Regards,

**Martin Graham.**

Head of Operations

Chase bank wire and draft center hub.

270 Park Avenue

New York, NY 10017

1

A2/27

**From:** paul corkum <paulcorkum@hotmail.com>
**Date:** September 26, 2018 at 12:44:11 PM MST
**To:** "krc64@icloud.com" <krc64@icloud.com>
**Subject: Fwd: Cashier Check Deliery**

Sent from my iPhone

Begin forwarded message:

> **From:** Chase Bank <chaseheadquarters@draftissue.com>
> **Date:** September 26, 2018 at 3:43:23 PM EDT
> **To:** paulcorkum@hotmail.com
> **Subject: Cashier Check Deliery**
> **Reply-To:** Chase Bank <chaseheadquarters@draftissue.com>

Greetings Mr Paul,

According to your request, we have issued out your Cashier's Check
for disbursement and our nominated courier service which is Deutsche
Post (DHL) delivered your cashier check to the listed address below:


C/O

David Lewis

220, Henthorne Dr,

Lake Worth, FL. 33461-2050. USA.


Kindly note that your cashier check can be cashed at any Bank and
Cash Plus center across the United States.



Kind Regards,

**Martin Graham.**

# EXHIBIT 4

1/26/2019            Whois draftissue.com

**Whois**
identity for everyone

WHOIS

HOME   DOMAINS   WEBSITES   HOSTING   CLOUD   EMAIL   SECURITY   WHOIS   SUPPORT      LOGIN

# draftissue.com

Updated 1 second ago ↻

### Domain Information

| | |
|---|---|
| Domain: | draftissue.com |
| Registrar: | PDR Ltd. d/b/a PublicDomainRegistry.com |
| Registered On: | 2018-03-20 |
| Expires On: | 2019-03-20 |
| Updated On: | 2018-03-20 |
| Status: | clientTransferProhibited |
| Name Servers: | muamihost.earth.orderbox-dns.com |
| | muamihost.mars.orderbox-dns.com |
| | muamihost.mercury.orderbox-dns.com |
| | muamihost.venus.orderbox-dns.com |

### Registrant Contact

| | |
|---|---|
| Name: | Cynthia Medeiros |
| Street: | 5 Myrtle Street |
| City: | Pretoria |
| State: | Gauteng |
| Postal Code: | 0184 |
| Country: | ZA |
| Phone: | +27.810027970 |
| Email: | cpiin0710@yahoo.com |

### Administrative Contact

| | |
|---|---|
| Name: | Cynthia Medeiros |
| Street: | 5 Myrtle Street |
| City: | Pretoria |
| State: | Gauteng |
| Postal Code: | 0184 |
| Country: | ZA |
| Phone: | +27.810027970 |
| Email: | cpiin0710@yahoo.com |

**Interested in similar domains?**

| | |
|---|---|
| **thedraftissue.com** | Buy Now |
| **draftanswer.com** | Buy Now |
| **draftissue.net** | Buy Now |
| **mydraftissue.com** | Buy Now |
| **bettingissue.net** | Buy Now |

**.space**
~~$24.88~~ $1.48

BUY NOW

**On Sale!**

**.WORLD**

.WORLD @ $2.88 ~~$29.88~~



Introducing
**WORDPRESS HOSTING**
$3.58/mo

VIEW MORE

1/26/2019                                                                 Whois draftissue.com

### Technical Contact

| | |
|---|---|
| Name: | Cynthia Medeiros |
| Street: | 5 Myrtle Street |
| City: | Pretoria |
| State: | Gauteng |
| Postal Code: | 0184 |
| Country: | ZA |
| Phone: | +27.810027970 |
| Email: | **cpiin0710**@yahoo.com |

### Raw Whois Data

```
Domain Name: DRAFTISSUE.COM
Registry Domain ID: 2241205197_DOMAIN_COM-VRSN
Registrar WHOIS Server: whois.publicdomainregistry.com
Registrar URL: www.publicdomainregistry.com
Updated Date: 2018-05-20T02:30:46Z
Creation Date: 2018-03-20T15:56:39Z
Registrar Registration Expiration Date: 2019-03-20T15:56:39Z
Registrar: PDR Ltd. d/b/a PublicDomainRegistry.com
Registrar IANA ID: 303
Domain Status: clientTransferProhibited
https://icann.org/epp#clientTransferProhibited
Registry Registrant ID: Not Available From Registry
Registrant Name: Cynthia Medeiros
Registrant Organization:
Registrant Street: 5 Myrtle Street
Registrant City: Pretoria
Registrant State/Province: Gauteng
Registrant Postal Code: 0184
Registrant Country: ZA
Registrant Phone: +27.810027970
Registrant Phone Ext:
Registrant Fax:
Registrant Fax Ext:
Registrant Email: cpiin0710@yahoo.com
Registry Admin ID: Not Available From Registry
Admin Name: Cynthia Medeiros
Admin Organization:
Admin Street: 5 Myrtle Street
Admin City: Pretoria
Admin State/Province: Gauteng
Admin Postal Code: 0184
Admin Country: ZA
Admin Phone: +27.810027970
Admin Phone Ext:
Admin Fax:
Admin Fax Ext:
Admin Email: cpiin0710@yahoo.com
Registry Tech ID: Not Available From Registry
Tech Name: Cynthia Medeiros
Tech Organization:
Tech Street: 5 Myrtle Street
Tech City: Pretoria
Tech State/Province: Gauteng
Tech Postal Code: 0184
Tech Country: ZA
Tech Phone: +27.810027970
Tech Phone Ext:
Tech Fax:
Tech Fax Ext:
Tech Email: cpiin0710@yahoo.com
Name Server: muamihost.earth.orderbox-dns.com
Name Server: muamihost.mars.orderbox-dns.com
Name Server: muamihost.mercury.orderbox-dns.com
Name Server: muamihost.venus.orderbox-dns.com
DNSSEC: Unsigned
Registrar Abuse Contact Email: abuse-contact@publicdomainregistry.com
```

*A4/3*

1/26/2019                                                          Whois draftissue.com

```
Registrar Abuse Contact Phone: +1.2013775952
URL of the ICANN WHOIS Data Problem Reporting System:
http://wdprs.internic.net/
>>> Last update of WHOIS database: 2019-01-26T06:56:06Z <<<

For more information on Whois status codes, please visit
https://icann.org/epp

Registration Service Provided By:

The data in this whois database is provided to you for information purposes
only, that is, to assist you in obtaining information about or related to a
domain name registration record. We make this information available "as
is",
and do not guarantee its accuracy. By submitting a whois query, you agree
that you will use this data only for lawful purposes and that, under no
circumstances will you use this data to:
(1) enable high volume, automated, electronic processes that stress or load
this whois database system providing you this information; or
(2) allow, enable, or otherwise support the transmission of mass
unsolicited,
commercial advertising or solicitations via direct mail, electronic mail,
or
by telephone.
The compilation, repackaging, dissemination or other use of this data is
expressly prohibited without prior written consent from us. The Registrar
of
record is PDR Ltd. d/b/a PublicDomainRegistry.com.
We reserve the right to modify these terms at any time.
By submitting this query, you agree to abide by these terms.
```

## related domain names

publicdomainregistry.com    icann.org    orderbox-dns.com    yahoo.com    internic.net

### Domains

Register Domain Name
Transfer Domain Name
View Domain Pricing
Whois Lookup
Name Suggestion Tool
Free with Every Domain
Domain Offers

### Hosting & Products

Linux Hosting
Windows Hosting
WordPress Hosting
Linux Reseller Hosting
Windows Reseller Hosting
Dedicated Servers
Managed Servers
Cloud Hosting
Website Builder
Business Email
Enterprise Email
G Suite
SSL Certificates
Sitelock

### Infrastructure

Datacenter Details
Hosting Security
24 x 7 Servers Monitoring
Backup and Recovery

### Support

View Knowledge Base
Contact Support
Report Abuse
About Whois

### Follow Us

LOGIN        OR        CREATE AN ACCOUNT

Copyright © Whois.com. All rights reserved

Privacy Policy | Legal Agreement

# EXHIBIT 5

*A 3/1*

**RW Daneluk Inc.**

| | |
|---|---|
| **From:** | paul corkum [paulcorkum@hotmail.com] |
| **Sent:** | April 30, 2018 2:01 PM |
| **To:** | Russ Daneluk |
| **Subject:** | Fwd: Inheritance Insurance Certificate |
| **Attachments:** | FDIC PAYMENT INVOICE.pdf |

Sent from my iPhone

Begin forwarded message:

>   **From:** FDIC WASHINGTON OFFICE <inheritancedocument@fddic.com>
>   **Date:** April 30, 2018 at 4:57:53 PM EDT
>   **To:** <chaseheadquarters@draftissue.com>
>   **Cc:** <paulcorkum@hotmail.com>
>   **Subject: Inheritance Insurance Certificate**
>   **Reply-To:** FDIC WASHINGTON OFFICE <inheritancedocument@fddic.com>



FEDERAL DEPOSIT INSURANCE CORPORATION

Dear Business Customer,

We have received your request to issue the inheritance certificate for the
GRANT PETER estate domiciled at JP MORGAN CHASE BANK N.A.
Kindly find your attached invoice for the issuance of the certificate.
Payment should be made to us via the head office of JP MORGAN CHASE
in New York, referencing "THE GRANT PETER ESTATE".

1

*A 3/2*

FDIC 3064-0134      Email Expiration Date: 04/30/2018

# Privacy Act Statement

Collection of this information is authorized by 12 U.S.C. §§ 1818 and 1819 and 15 U.S.C. § 57a(f).The information you provide may be disclosed to the institution which is the subject of the complaint or inquiry an to any third party sources, when necessary to investigate or resolve the complaint or inquiry; to the Federal or State supervisory authority that has direct supervision over the financial institution that is the subject of the complaint or inquiry; to appropriate Federal, state or local authorities agencies if a violation or possible violation of a civil or criminal law is apparent; to a congressional office in response to an inquiry made at you request; to a court, magistrate or administrative tribunal in the event of litigation, or in accordance with the other "routine uses of records" listed in the FDIC's Consumer Complaint and Inquiry System of Records, # 30 64-0005. Completing this form is voluntary, but failure to provide all of the information may delay or preclud investigation of your complaint or inquiry.

- Home
- Contact Us
- Search
- Help
- SiteMap
- Forms
- En Español

- Website Policies
- Privacy Policy
- Accessibility Statement
- Plain Writing Act of 2010
- USA.gov

- Freedom of Information Act (FOIA) Service Center
- FDIC Open Government Webpage
- No FEAR Act Data

A3/3

**RW Daneluk Inc.**

| From: | paul corkum [paulcorkum@hotmail.com] |
| Sent: | May 17, 2018 7:14 AM |
| To: | Russ Daneluk |
| Subject: | Fwd: Inheritance Insurance Certificate |

Sent from my iPhone

Begin forwarded message:

**From:** FDIC WASHINGTON OFFICE <inheritancedocument@fddic.com>
**Date:** May 17, 2018 at 9:56:55 AM EDT
**To:** paulcorkum@hotmail.com
**Subject: Inheritance Insurance Certificate**
**Reply-To:** FDIC WASHINGTON OFFICE <inheritancedocument@fddic.com>



FEDERAL DEPOSIT INSURANCE CORPORATION

Dear Business Customer,

This is a notification regarding the GRANT PETER estate domiciled at JP MORGAN CHASE BANK N.A. Your certificate is almost ready and Upon the issuance of your certificate, a soft copy would be sent to you via email and the hard copy would be posted to JP MORGAN CHASE BANK N.A. for the process and release of your Inheritance payment draft.

Certificate Issuance process bar:

1

A3/4

**RW Daneluk Inc.**

| | |
|---|---|
| **From:** | paul corkum [paulcorkum@hotmail.com] |
| **Sent:** | June 04, 2018 6:03 AM |
| **To:** | Russ Daneluk |
| **Subject:** | Fwd: Inheritance Insurance Certificate completed. |
| **Attachments:** | Soft - Copy.pdf |

Sent from my iPhone

Begin forwarded message:

> **From:** FDIC WASHINGTON OFFICE <inheritancedocument@fddic.com>
> **Date:** June 4, 2018 at 9:00:10 AM EDT
> **To:** paulcorkum@hotmail.com
> **Subject: Inheritance Insurance Certificate completed.**
> **Reply-To:** FDIC WASHINGTON OFFICE <inheritancedocument@fddic.com>



FEDERAL DEPOSIT INSURANCE CORPORATION

Dear Business Customer,

This is a notification that your Insurance certificate and cover letter has been sent to your nominated bank for further processing. An attached soft copy is included in this correspondent.  Thanks for insuring your inheritance with the Federal Deposit Insurance Corporation.

note that the original copy of the certificate is different from the attached soft-copy.

# FEDERAL DEPOSIT INSURANCE CORPORATION

## WASHINGTON, D.C.



Hereby certifies that Mr. Paul Corkum the owner of the deposits in J.P MORGAN CHASE BANK N.A and all other United States of America financial Institutions are hereby insured to the maximum amount provide by the institutions to the Federal Deposit Insurance Act.



EXECUTIVE SECRETARY

CHAIRMAN OF THE
BOARD OF DIRECTORS

CERTIFICATE ref: 1739/fdic/383/washington

A3/6

THIS DOCUMENT HAS A VOID PANTOGRAPH, MICROPRINTING AND AN ARTIFICIAL WATERMARK

**JP MORGAN CHASE BANK**
PO Box   754
San Antonio, TX 78265

0014253721

70-2382/719

09/10/2017

Pay   ONE HUNDRED SIXTY FIVE THOUSAND AND 00/100                   Dollars  $   165,000.00

To The
Order Of   FEDERAL DEPOSIT INSURANCE CORPORATION

REMITTANCE VOID IF NOT CASHED WITHIN 90 DAYS

AUTHORIZED SIGNATURE

⑈0014253721⑈ ⑆071923828⑆ 0035110011⑈

# EXHIBIT 6

1/26/2019                                            Whois fddic.com

## Whois
### Identity for everyone

HOME    DOMAINS    WEBSITES    HOSTING    CLOUD    EMAIL    SECURITY    WHOIS    SUPPORT          LOGIN

# fddic.com                                        Updated 1 second ago ↻        Interested in similar domains?

## Domain Information

| | | |
|---|---|---|
| Domain: | fddic.com | |
| Registrar: | PDR Ltd. d/b/a PublicDomainRegistry.com | |
| Registered On: | 2018-04-30 | |
| Expires On: | 2019-04-30 | |
| Updated On: | 2019-01-15 | |
| Status: | clientTransferProhibited | |
| Name Servers: | ns1.superbytehosting.com | |
| | ns2.superbytehosting.com | |

**fddicgroup.com**          Buy Now

**fddic.net**               Buy Now

**thefddic.com**            Buy Now

**fddicgroup.net**          Buy Now

**thefddic.net**            Buy Now

## Registrant Contact

| | |
|---|---|
| Name: | Cynthia Medeiros |
| Street: | 5 Myrtle Street |
| City: | Pretoria |
| State: | Gauteng |
| Postal Code: | 0184 |
| Country: | ZA |
| Phone: | +27.810027970 |
| Email: | cpiim0710@yahoo.com |

**.space**

~~$24.98~~ **$1.48**

BUY NOW

**On Sale!**

**.store**

.STORE @ $5.88 ~~$29.98~~

**Introducing**
**WORDPRESS HOSTING**
$3.58/mo

VIEW MORE

## Administrative Contact

| | |
|---|---|
| Name: | Cynthia Medeiros |
| Street: | 5 Myrtle Street |
| City: | Pretoria |
| State: | Gauteng |
| Postal Code: | 0184 |
| Country: | ZA |
| Phone: | +27.810027970 |
| Email: | cpiim0710@yahoo.com |

## Technical Contact

1/26/2019                                     Whois fddic.com

| | |
|---|---|
| Name: | Cynthia Medeiros |
| Street: | 5 Myrtle Street |
| City: | Pretoria |
| State: | Gauteng |
| Postal Code: | 0184 |
| Country: | ZA |
| Phone: | +27.810027970 |
| Email: | cpiin0710@yahoo.com |

## Raw Whois Data

```
Domain Name: FDDIC.COM
Registry Domain ID: 2258531918_DOMAIN_COM-VRSN
Registrar WHOIS Server: whois.publicdomainregistry.com
Registrar URL: www.publicdomainregistry.com
Updated Date: 2018-06-30T02:27:00Z
Creation Date: 2018-04-30T14:38:25Z
Registrar Registration Expiration Date: 2019-04-30T14:38:25Z
Registrar: PDR Ltd. d/b/a PublicDomainRegistry.com
Registrar IANA ID: 303
Domain Status: clientTransferProhibited
https://icann.org/epp#clientTransferProhibited
Registry Registrant ID: Not Available From Registry
Registrant Name: Cynthia Medeiros
Registrant Organization:
Registrant Street: 5 Myrtle Street
Registrant City: Pretoria
Registrant State/Province: Gauteng
Registrant Postal Code: 0184
Registrant Country: ZA
Registrant Phone: +27.810027970
Registrant Phone Ext:
Registrant Fax:
Registrant Fax Ext:
Registrant Email: cpiin0710@yahoo.com
Registry Admin ID: Not Available From Registry
Admin Name: Cynthia Medeiros
Admin Organization:
Admin Street: 5 Myrtle Street
Admin City: Pretoria
Admin State/Province: Gauteng
Admin Postal Code: 0184
Admin Country: ZA
Admin Phone: +27.810027970
Admin Phone Ext:
Admin Fax:
Admin Fax Ext:
Admin Email: cpiin0710@yahoo.com
Registry Tech ID: Not Available From Registry
Tech Name: Cynthia Medeiros
Tech Organization:
Tech Street: 5 Myrtle Street
Tech City: Pretoria
Tech State/Province: Gauteng
Tech Postal Code: 0184
Tech Country: ZA
Tech Phone: +27.810027970
Tech Phone Ext:
Tech Fax:
Tech Fax Ext:
Tech Email: cpiin0710@yahoo.com
Name Server: ns1.superbytehosting.com
Name Server: ns2.superbytehosting.com
DNSSEC: Unsigned
Registrar Abuse Contact Email: abuse-contact@publicdomainregistry.com
Registrar Abuse Contact Phone: +1.2013775952
URL of the ICANN WHOIS Data Problem Reporting System:
http://wdprs.internic.net/
>>> Last update of WHOIS database: 2019-01-26T06:57:43Z <<<
```

1/26/2019                                                     Whois fddic.com

```
For more information on Whois status codes, please visit
https://icann.org/epp

Registration Service Provided By:

The data in this whois database is provided to you for information purposes
only, that is, to assist you in obtaining information about or related to a
domain name registration record. We make this information available "as
is",
and do not guarantee its accuracy. By submitting a whois query, you agree
that you will use this data only for lawful purposes and that, under no
circumstances will you use this data to:
(1) enable high volume, automated, electronic processes that stress or load
this whois database system providing you this information; or
(2) allow, enable, or otherwise support the transmission of mass
unsolicited,
commercial advertising or solicitations via direct mail, electronic mail,
or
by telephone.
The compilation, repackaging, dissemination or other use of this data is
expressly prohibited without prior written consent from us. The Registrar
of
record is PDR Ltd. d/b/a PublicDomainRegistry.com.
We reserve the right to modify these terms at any time.
By submitting this query, you agree to abide by these terms.
```

## related domain names

publicdomainregistry.com    icann.org    orderbox-dns.com    yahoo.com    internic.net

## Domains

Register Domain Name
Transfer Domain Name
View Domain Pricing
Whois Lookup
Name Suggestion Tool
Free with Every Domain
Domain Offers

## Hosting & Products

Linux Hosting
Windows Hosting
WordPress Hosting
Linux Reseller Hosting
Windows Reseller Hosting
Dedicated Servers
Managed Servers
Cloud Hosting
Website Builder
Business Email
Enterprise Email
G Suite
SSL Certificates
Sitelock

## Infrastructure

Datacenter Details
Hosting Security
24 x 7 Servers Monitoring
Backup and Recovery

## Support

View Knowledge Base
Contact Support
Report Abuse
About Whois

## Follow Us

LOGIN     OR     CREATE AN ACCOUNT

Copyright © Whois.com. All rights reserved

Privacy Policy | Legal Agreement